NELSON, Appellant, v. EMPLOYERS MUTUAL CASUALTY COMPANY and another, Respondents.

*No. 235. Submitted under sec. (Rule) 251.54 April 3, 1974.—Decided May 20, 1974.*
(Also reported in 217 N. W. 2d 670.)

The cause was submitted for the appellant on the brief of *Richard A. Boltz* and *Galloway, Olson, Boltz & Steinbrinck,* all of Green Bay, and for the defendant-respondent Mutual Service Casualty Insurance Company on the brief of *Lontkowski & Lontkowski* of Green Bay.

HALLOWS, C. J.   The Employers Mutual policy provided, among other things, under its uninsured motorist coverage and medical payment coverage, it would pay all sums which the insured shall be legally entitled to recover as damages from the operator of an uninsured highway vehicle because of bodily injury sustained by the insured.   The coverage was limited to $10,000 per person and $20,000 per accident and further provided that under the uninsured motorist bodily injury coverage, the company was not obligated to pay any part of the damage the insured was entitled to recover from the operator of an uninsured highway vehicle which represented expenses for medical services paid or payable under the medical payments coverage of the policy.   The

medical payment coverage was limited to $500. Employers Mutual coverage for bodily injury caused by an uninsured motorist was considered primary coverage and was paid to the full extent of $10,000 in the settlement; $300 was paid under the medical payment coverage.

The Mutual Service policy provided insurance coverage for a member of the household driving a nonowned car, and its uninsured motorist coverage clause provided as follows:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom . . . sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile . . . ."

The policy provided the company's liability under its uninsured motorist coverage for bodily injury was $10,000 per person and $20,000 per accident except where an insured simultaneously claims under both the uninsured motorist coverage and the medical payments coverage, in which case, "any loss payable under [uninsured motorist coverage] to or for any person shall be reduced by all sums paid on account of such bodily injury under [medical payments]." The policy also provided in respect to uninsured motorist coverage as it applied to the facts of this case that such coverage was excess:

"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this Part exceeds the sum of the applicable limits of liability of all such other insurance."

The medical payments coverage is limited to $500 per person, payable "to or for the named insured and each relative who sustains bodily injury . . . caused by accident, while occupying or through being struck by an automobile, or trailer of any type." Besides these limitations on coverage, the policy contains an "Other Insurance" provision applicable to the medical payments coverage, providing as follows:

"If there is other automobile medical payments insurance against a loss covered by [the medical payments coverage] of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance; *provided, however, the insurance with respect to a . . . non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance.*" (Emphasis added.)

Thus, for one in Miss Nelson's position, Mutual Service's policy provides for excess coverage both for bodily injury and for medical payments and for a reduction of its uninsured motorist coverage.

The narrow issue presented is whether the Mutual Service policy's excess and reducing clauses are in derogation of sec. 204.30 (5), Stats., as that statute read at the time of the accident.[1]

---

[1] Sec. 204.30 (5) was created by the Laws of 1965, ch. 486, sec. 1 (effective date—January 1, 1966). It was therein prescribed that no automobile or motor vehicle liability insurance policy should be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state "unless coverage is provided therein or supplemental thereto in limits for bodily injury or death in the amount of $10,000 per person and $20,000 per accident . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ." Sub. (5) was renumbered (5) (a) by Laws of 1965, ch. 598, sec. 1 (effective

The brief of Nelson seeks to have this court interpret this statute so as to provide that insurance involving an uninsured motorist may be stacked, that is, that all uninsured motorist insurance available must in effect be made primary insurance no matter what the amount of the coverage and no maximum limit of recovery provision in any policy can be reduced by the fact there is other insurance available. The majority of jurisdictions considering their uninsured motorist coverage statute have interpreted it to mean that the section did not provide a maximum amount of coverage and the uninsured motorist coverage in each policy applicable could not be reduced so as to leave the plaintiff with recovery only in the amount stated in the statute that each policy must pro-

date—July 16, 1966). By the Laws of 1967, ch. 174 (effective date —November 23, 1967), sec. 204.30 (5) (a) was amended to provide that uninsured motorist insurance coverage limits of "at least" $10,000 per person and $20,000 per accident must be afforded insureds, subject of course, as had been the case from the beginning, to the insured's right to reject such coverage. It was also provided that insureds might raise uninsured motorist coverage limits up to bodily injury liability limits. By the Laws of 1969, ch. 312, sec. 3 (effective date—July 1, 1970), the prescribed minimum uninsured motorist coverage limits were raised to $15,000 per person and $30,000 per accident. Just recently, the insured's right to reject uninsured motorist coverage was abolished. *See* Laws of 1971, ch. 28.

By the terms of ch. 72, Laws of 1973, sec. 204.30 (5) (a) was amended by the addition of the following language:

". . . The uninsured motorist bodily injury coverage limits provided in an automobile liability or motor vehicle liability policy of insurance as required in this subsection shall not be reduced by the terms thereof to provide the insured with less protection than would be afforded him if he were injured by a motorist insured under an automobile liability or motor vehicle liability policy of insurance containing the limits provided in this subsection."

The effective date of the amendment is declared to be July 22, 1973. *See* Wisconsin Legislative Service, No. 2 (1973), ch. 72, pp. 225, 226.

vide.[2]  A minority view construes their statutes as not prohibiting excess clauses and reducing clauses in unin-

[2] Alabama—*Safeco Ins. Co. of America v. Jones* (1970), 286 Ala. 606, 243 So. 2d 736 (clause invalid under statute).

Alaska—*Werley v. United Services Automobile Asso.* (Alaska 1972), 498 Pac. 2d 112.

Arizona—*Bacchus v. Farmers Ins. Group Exchange* (1970), 106 Ariz. 280, 475 Pac. 2d 264; *Porter v. Empire Fire & Marine Ins. Co.* (1970), 106 Ariz. 274, 475 Pac. 2d 258.

Colorado—*Alliance Mut. Casualty Co. v. Duerson* (Colo. App. 1973), 510 Pac. 2d 458.

Florida—*Sellers v. United States Fidelity & Guaranty Co.* (Fla. Sup. Ct. 1966), 185 So. 2d 689.

Georgia—*State Farm Mut. Automobile Ins. Co. v. Murphy* (1970), 226 Ga. 710, 177 S. E. 2d 257.

Indiana—*Patton v. Safeco Ins. Co.* (1971), 148 Ind. App. 548, 267 N. E. 2d 859.

Kansas—*Sturdy v. Allied Mut. Ins. Co.* (1969), 203 Kan. 783, 457 Pac. 2d 34; *Clayton v. Alliance Mut. Casualty Ins. Co.* (1973), 212 Kan. 640, 512 Pac. 2d 507.

Kentucky—*Meridian Mut. Ins. Co. v. Siddons* (Ky. 1970), 451 S. W. 2d 831.

Louisiana—*Graham v. American Casualty Co. of Reading, Pa.* (1972), 261 La. 85, 259 So. 2d 22; *Deane v. McGee* (1972), 261 La. 686, 260 So. 2d 669.

Massachusetts—*Johnson v. Travelers Indemnity Co.* (Mass. 1971), 269 N. E. 2d 700.

Michigan—*Blakeslee v. Farm Bureau* (1972), 388 Mich. 464, 201 N. W. 2d 786.

Minnesota—*Van Tassel v. Horace Mann Ins. Co.* (1973), 296 Minn. 181, 207 N. W. 2d 348.

Mississippi—*Harthcock v. State Farm Mut. Automobile Ins. Co.* (Miss. 1971), 248 So. 2d 456.

Missouri—*Steinhaeufel v. Reliance Ins. Companies* (Mo. Ct. App. 1973), 495 S. W. 2d 463.

Nebraska—*Bose v. American Family Mut. Ins. Co.* (1970), 186 Neb. 209, 181 N. W. 2d 839.

Nevada—*United Services Automobile Asso. v. Dokter* (1970), 86 Nev. 917, 478 Pac. 2d 583 (stacking permitted although policies prior to uninsured motorist law).

New Jersey—*McFarland v. Motor Club of America Ins. Co.* (1972), 120 N. J. Super. 554, 295 Atl. 2d 375.

sured motorist coverage.[3] This problem has been a subject of considerable discussion and it would serve no

New Mexico—*American Mut. Ins. Co. v. Romero* (10th Cir. 1970), 428 Fed. 2d 870.

North Carolina—*Moore v. Insurance Co.* (1967), 270 N. C. 532, 155 S. E. 2d 128.

Ohio—*Curran v. State Automobile Mut. Ins. Co.* (1971), 25 Ohio St. 2d 33, 266 N. E. 2d 566.

Oregon—*Sparling v. Allstate Ins. Co.* (1968), 249 Ore. 471, 439 Pac. 2d 616 (no statute involved).

Pennsylvania—*Harleysville Mut. Casualty Co. v. Blumling* (1968), 429 Pa. 389, 241 Atl. 2d 112.

Rhode Island—*Pickering v. American Employers Ins. Co.* (1971), 109 R. I. 143, 282 Atl. 2d 584.

South Carolina—*Boyd v. State Farm Mut. Automobile Ins. Co.* (1973), 260 S. C. 316, 195 S. E. 2d 706.

South Dakota—*Westphal v. Amco Ins. Co.* (S. D. Sup. Ct. 1973), 209 N. W. 2d 555.

Texas—*Fidelity & Casualty Co. of New York v. Gatlin* (Tex. Civ. App. 1971), 470 S. W. 2d 924; *Hartford Accident & Indemnity Co. v. Turner* (Tex. Civ. App. 1973), 498 S. W. 2d 8.

Virginia—*Bryant v. State Farm Mut. Automobile Ins. Co.* (1965), 205 Va. 897, 140 S. E. 2d 817, overruling *Travelers Indemnity Co. v. Wells* (4th Cir. 1963), 316 Fed. 2d 770.

West Virginia—*Tulley v. State Farm Mut. Automobile Ins. Co.* (D. C. W. Va. 1972), 345 Fed. Supp. 1123.

Some of these cases are cited in *Uninsured Motorist Insurance: Validity and Construction of "Other Insurance" Provisions*, 28 A. L. R. 3d 551; *see also:* 7 Appleman, *Insurance Law and Practice* (1974 Pocket Part), pp. 100–114, sec. 4331.

[3] *Burcham v. Farmers Ins. Exchange* (1963), 255 Iowa 69, 121 N. W. 2d 500; *Harris v. Southern Farm Bureau Casualty Ins. Co.* (1970), 247 Ark. 961, 448 S. W. 2d 652, relying on *M. F. A. Mutual Ins. Co. v. Wallace* (1968), 245 Ark. 230, 431 S. W. 2d 742, overturning two federal decisions reaching the opposite conclusion. *Childers v. Southern Farm Bureau Casualty Ins. Co.* (D. C. Ark. 1968), 282 Fed. Supp. 866, and *Safeco Ins. Co. of America v. Robey* (8th Cir. 1968), 399 Fed. 2d 330. *Mid-Century Ins. Co. v. Koch* (1970), 11 Cal. App. 3d 1019, 90 Cal. Rptr. 280; *Grunfeld v. Pacific Automobile Ins. Co.* (1965), 232 Cal. App. 2d 4, 42 Cal. Rptr. 516.

The Iowa and Arkansas approach is followed in the following jurisdictions:

good purpose for this court to replow this field which almost every state has cultivated.[4]

Illinois—*Morelock v. Millers' Mut. Ins. Asso.* (1971), 49 Ill. 2d 234, 274 N. E. 2d 1; *Tindall v. Farmers Automobile Management Corp.* (1967), 83 Ill. App. 2d 165, 226 N. E. 2d 397 (the legislative intendment of mandatory uninsured motorist coverage is satisfied if *a* policy of insurance in the minimum limits under the financial responsibility law is made available even though the amount of the policy might not be sufficient to satisfy all claims made).

New Hampshire—*Maryland Casualty Co. v. Howe* (1965), 106 N. H. 422, 213 Atl. 2d 420 (the statute is not designed to provide the insured with greater insurance protection than would have been available had the insured been injured by an operator with a policy containing minimum statutory limits).

New York—*Globe Indemnity Co. v. Baker's Estate* (1964), 22 App. Div. 2d 658, 253 N. Y. Supp. 2d 170; *Public Service Mut. Ins. Co. v. Cross* (1972), 38 App. Div. 2d 930, 330 N. Y. Supp. 2d 224 (the language of the "Other Insurance" provision is clear and free of ambiguity and will be enforced to bar "stacking").

Utah—*Lyon v. Hartford Accident & Indemnity Co.* (1971), 25 Utah 2d 311, 480 Pac. 2d 739; *Russell v. Paulson* (1966), 18 Utah 2d 157, 417 Pac. 2d 658 (the statute requiring uninsured motorist insurance coverage to the minimum limits required by the financial responsibility laws of liability coverage was not intended to place the victim of an uninsured motorist in a better position than the innocent victim of the minimally insured motorist—therefore, excess—escape clauses must be given effect).

Washington—*Miller v. Allstate Ins. Co.* (1965), 66 Wash. 2d 871, 405 Pac. 2d 712 (where one of the policies contains a "pro rata" clause and the other a "no liability" clause, the insurance afforded under the "pro rata" clause is other similar insurance so as to effectuate the prohibition against payout in the "no liability" clause where such other insurance is available—the no liability clause will be given effect because unambiguous).

Tennessee—*Shoffner v. State Farm Mut. Automobile Ins. Co.* (Tenn. Sup. Ct. 1972), 494 S. W. 2d 756 (although uninsured motorist insurance to specified minimum limits is mandatory, there is an express legislative prohibition against stacking or pyramiding uninsured motorist coverage).

We do not consider this case to be one of first impression but rather to be ruled by our reasoning in *Leatherman v. American Family Mut. Ins. Co.* (1971), 52 Wis. 2d 644, 190 N. W. 2d 904, and *Scherr v. Drobac* (1972), 53 Wis. 2d 308, 193 N. W. 2d 14. In *Leatherman* this court had before it the question of whether a plaintiff who had been injured in an accident involving an insured motorist and an uninsured motorist could recover the excess of his judgment over the amount paid by the insured motorist from his own insurance company under its uninsured motorist coverage clause. The plaintiff's insured's policy provided, however, that any amount payable to him under the uninsured motorist policy was to be reduced by all sums paid to the insured by or on behalf of a jointly liable insured motorist. This court took the view that the issue in the case was whether the uninsured motorist provision guaranteed payment to the plaintiff only to the extent that all other sources had not yielded the recovery to which the plaintiff would otherwise be entitled under the uninsured motorist coverage or whether it guaranteed recovery equivalent to that which would have been had if the uninsured motorist had been minimally insured. This court took the first alternative

*See also:* 2 Long, *The Law of Liability Insurance,* p. 24–29, sec. 24.15. Certainly the Washington State and Tennessee decisions must be distinguished from the instant situation.

[4] *See:* 28 A. L. R. 3d 551; 7 Appleman, *Insurance Law and Practice* (1974 Pocket Part), pp. 100–114, sec. 4331. Comment, *The Meaning, Scope, and Validity of the Other Insurance Provisions Which Apply to the Uninsured Motorist Endorsement,* 53 Marq. L. Rev. (1970), 397, 398; Widiss, *A Guide to Uninsured Motorist Coverage* (1969), p. 106, sec. 2.59; Pretzel, *Uninsured Motorists* (1972), p. 82, sec. 25.5; Note, *Insurance—Invalidity of "Other Insurance" Clauses in a Double Coverage Situation,* 4 Seton Hall L. Rev. (1973), 697; Note, *Uninsured Motorist Coverage—Other Insurance Clause—"Available" Interpreted,* 38 Mo. L. Rev. (1973), 340, 342; Comment, *Limitations of Liability Within Uninsured Motorist Insurance Policies and Their Validity Under Mandatory Statutes,* 52 Neb. L. Rev. (1973), 156.

and recognized that the reducing clause applied and since the judgment exceeded the amount of the policy limit, the $10,000 paid by the insured motorist was applicable and automatically reduced recovery under the insured's policy. Although the issue was not squarely presented, the court upheld impliedly the validity of the reducing clause and stated the argument that such a clause was invalid was more properly addressed to the legislature.

The same situation was presented in *Scherr v. Drobac, supra,* except the insured expressly contended the reducing clause violated sec. 204.30 (5), Stats. 1967, and was therefore invalid. The court again held that once other sources yielded the amount of the uninsured motorist coverage available to the plaintiff under the uninsured motorist feature of his own policy, the uninsured motorist coverage in his policy was not available to him. Thus, *Scherr* followed *Leatherman*. While it can be argued that these cases dealt more with the question of underinsurance, viewed from the plaintiff's standpoint, rather than with the question of uninsurance, the reasoning in these cases is applicable to the present case. We are not inclined to reverse that reasoning or to make artificial distinctions. The question is not public policy, who paid insurance premiums or any other issue, but what sec. 204.30 (5), Stats. 1967, requires in way of uninsured motorist coverage.

It is argued that the legislature meant that uninsured motorist coverage, if provided under this section, had to provide absolutely the amount of coverage stated in the section. Thus the amount of coverage provided by statute was the minimum for each policy and not the maximum coverage afforded in fact by several policies. It is contended this view is correct, because after our decision in *Leatherman,* sec. 204.30 (5) (a), Stats. 1967, was amended by the legislature by ch. 72, Laws of 1973. This section now expressly provides that the uninsured motor-

ist coverage shall not be reduced by the terms thereof to provide the insured with less protection than would be afforded him if he were injured by a motorist insured under an automobile policy containing the limits provided in this subsection. We do not hereby construe this section or intimate any interpretation; we point out the amendment because of the argument made.

This amendment has no interpretative effect upon our construction of the statute as it read in 1967. Assuming the amendment allows stacking of uninsured motorist coverages, the argument that the statute of 1967 allowed stacking because the legislature provided for it in 1973 cuts both ways. Just as valid is the argument that the legislature passed the 1973 amendment because the 1967 statutes did not so provide or that the legislature did not think about the problem when it enacted the 1967 statute and therefore omitted covering it. Of course, it is possible the legislature did think of the problem but the statute is poorly drawn that its intention is not expressed in such words that this court can reasonably find its intention. The intention of the legislature is not enough. Interpretation of ambiguous legislative language at best is in hindsight. Legislative intent must be conveyed in language sufficient for this court to find the intention either clearly expressed or if there is an ambiguity by resort to rules of construction, legislative history and other collateral legitimate sources.

The trial court was correct in its interpretation of the law and of sec. 204.30 (5), Stats., and on this issue should be affirmed.

The other issues raised in the brief were not passed upon by the trial court or have become moot, and this court declines to consider them.

*By the Court.*—Judgment affirmed.