[No. 6949-4-III.   Division Three.   June 17, 1986.]

MAX E. TAXTER, ET AL, *Respondents,* v. SAFECO INSURANCE COMPANY OF AMERICA, *Respondent,* RAINIER INSURANCE COMPANY, *Appellant.*

---

122

*W. Matt Murray* and *Murray, Dunham & Murray,* for appellant.

*Stephen F. Backman, Joseph A. Blumel III,* and *Backman, Blumel & Reed,* for respondents Taxter.

*Ronald G. Morrison, Kenneth H. Kato,* and *Huppin, Ewing, Anderson & Morrison,* for respondent Safeco Insurance Co.

GREEN, C.J.—This is a declaratory judgment action to determine coverage under automobile insurance policies issued by Rainier Insurance Company and Safeco Insurance Company to Max and Delores Taxter.

The Taxters had an automobile insurance policy with Safeco that was to expire on November 25, 1983. They were given a grace period in which to renew; it expired on December 15. The Taxters were dissatisfied with the amount of the premium and Mrs. Taxter informed Safeco they were considering other companies. Effective December 2, the Taxters obtained a policy from Rainier, intending to let the Safeco policy lapse. On December 13, Mr. Taxter, while driving his 1973 Toyota Land Cruiser, was struck head on by an automobile driven by Howard Russell. The next day Mrs. Taxter informed Safeco of the accident. Unaware of the Rainier policy, Safeco told Mrs. Taxter to pay the premium on the Safeco policy to prevent it from lapsing, which she did. Thus, the Taxters had two automobile policies with limits of $100,000 each at the time of the accident.

Mr. Russell's company paid the Taxters its policy limits of $100,000. Safeco paid $3,997.70 for property damage to the Toyota, but declined further payment on the basis its

policy automatically terminated as to other coverage upon Taxters' purchase of similar coverage under the Rainier policy. Rainier paid $14,462 under its personal injury protection (PIP) coverage, but, in light of Safeco's position, refused further payment contending the two companies should share equally in their underinsured motorist coverage. Rainier also took the position the PIP payment should offset whatever amount Rainier might be required to pay.

The Taxters then brought this action to determine coverage under these two policies. The trial court denied Rainier's motion for summary judgment, but granted summary judgment for Safeco, holding: (1) The doctrine of cancellation by substitution and the automatic termination provisions of Safeco's policy terminated coverage to the extent Rainier provided similar coverage and thus Safeco is not required to pay underinsured motorist benefits; (2) Rainier could not offset payments made under its PIP coverage against the amount due for underinsured motorist coverage; and (3) it was unnecessary to decide whether Taxters could stack coverage under both policies. Rainier and Taxters appeal.

First, it is contended the court erred when it ruled that Taxters' purchase of the Rainier policy terminated like coverage by Safeco under the doctrine of cancellation by substitution and the automatic termination provision of the Safeco policy. It is argued the exclusive method for canceling the Safeco policy is by written notice pursuant to RCW 48.18.291, .300 and RCW 48.22.030. Since the termination of the Safeco policy was not effected according to statute, it is contended the policy remains in effect and Safeco should be required to equally share the underinsured motorist payment. We disagree.

■■ Washington early recognized and applied the doctrine of cancellation by substitution in *Bache v. Great Lks. Ins. Co.*, 151 Wash. 494, 499, 276 P.2d 549 (1929), where the court stated:

> [T]he procuring of new insurance by an owner, or by his agent authorized so to do, for a term commencing before

> the expiration of the term of existing insurance, with intent to have the new insurance take the place of the existing insurance . . . constitutes in law an effective, voluntary cancellation of the existing insurance.

While it is true, as Rainier contends, the doctrine has fallen into disfavor because it allows cancellation without notice to the insurer, *Ector v. American Liberty Ins. Co.,* 138 Ga. App. 519, 226 S.E.2d 788 (1976); *Lee v. Ohio Cas. Ins. Co.,* 58 Ill. App. 3d 1, 373 N.E.2d 1027 (1978); *Milbank Mut. Ins. Co. v. State Farm Fire & Cas. Co.,* 294 N.W.2d 426 (S.D. 1980), and thus violates the contractual necessity of mutual consent, *Franklin v. Carpenter,* 309 Minn. 419, 244 N.W.2d 492 (1976), it is upheld where the insured communicates his intent to replace the policy to the insurer or the terms of the contract specifically provide for substitution as a method of cancellation. In those circumstances, the courts hold the necessary element of mutual consent is satisfied. *Davidson v. State Farm Mut. Auto. Ins. Co.,* 161 Ga. App. 21, 288 S.E.2d 832 (1982); *Sizelove v. INA Ins. Co. of North Am.,* 104 Ill. App. 3d 864, 433 N.E.2d 696 (1982); *Songer v. State Farm Fire & Cas. Co.,* 91 Ill. App. 3d 248, 414 N.E.2d 768 (1980); *Wilbanks v. Prudential Property & Cas. Ins. Co.,* 277 S.C. 256, 286 S.E.2d 127 (1982); *Tyner v. Cherokee Ins. Co.,* 262 S.C. 462, 205 S.E.2d 380 (1974); 43 Am. Jur. 2d *Insurance* §§ 431, 432 (1982). Even the cases relied upon by Rainier that disfavor the doctrine uphold it when the above conditions are met. *Glens Falls Ins. Co. v. Founders' Ins. Co.,* 209 Cal. App. 2d 157, 25 Cal. Rptr. 753, 3 A.L.R.3d 1058 (1962); *Ector v. American Liberty Ins. Co., supra; Franklin v. Carpenter, supra; Milbank Mut. Ins. Co. v. State Farm Fire & Cas. Co., supra.*

Here, while the insureds did not communicate their intent to replace the policy, Safeco's policy terms provide the necessary mutual consent. These terms provide:

> If *you* [the insured] obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

(Italics ours.) We cannot ignore the language in the contract nor revise the contract under the theory of construing it. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 73, 549 P.2d 9 (1976). The Taxters consented to these terms when they obtained the Safeco policy. They cannot claim lack of notice when they had either actual or constructive knowledge of it. We conclude the Safeco policy terminated to the extent the Rainier policy provided similar coverage.

It is also contended Safeco's automatic termination provision violates the written notice requirement of RCW 48.18.291 which governs the method by which an insurer may cancel an automobile insurance policy.[1] Safeco argues RCW 48.18.291 governs cancellation by the *insurer,* and not termination by unilateral acts of the insured. We agree.

The term "cancellation" refers to a unilateral act of the insurer terminating coverage during the policy term. *Cf. Safeco Ins. Co. v. Irish,* 37 Wn. App. 554, 681 P.2d 1294, *review denied,* 102 Wn.2d 1013 (1984); *Continental Ins. Co. v. Paccar, Inc.,* 26 Wn. App. 850, 614 P.2d 675 (1980), *rev'd on other grounds,* 96 Wn.2d 160, 634 P.2d 291 (1981). The purpose of the "notice" statutes is to provide the insured the opportunity to obtain other insurance prior to cancellation. *Dairyland Ins. Co. v. Kankelberg,* 368 F. Supp. 996 (D. Or. 1973). Courts have held RCW 48.18.291 is not applicable when it is the insured's act which brings about the termination of the policy and have refused to apply it. *See Safeco Ins. Co. v. Irish, supra* (RCW 48.18.291 held not applicable to an automatic termination provision where the

---

[1]RCW 48.18.291 provides in part:

"(1) No contract of insurance predicated wholly or in part upon the use of a private passenger automobile shall be terminated by cancellation by the insurer until at least twenty days after mailing written notice of cancellation to the named insured at the latest address filed with the insurer by or on behalf of the named insured, accompanied by the reason therefor . . ."

RCW 48.18.300 provides in part:

"(1) Cancellation by the insured of any policy which by its terms is cancellable at the insured's option or of any binder based on such policy may be effected by written notice thereof to the insurer or surrender of the policy or binder for cancellation prior to or on the effective date of such cancellation."

insured failed to pay a premium as a condition to renewal); *Dairyland Ins. Co. v. Kankelberg, supra* (RCW 48.18.291 held not applicable to a termination provision based on the insured's stop payment on a check). Here, it was the act of the insured Taxters that resulted in the termination. That termination did not leave the Taxters without coverage because of the Rainier policy; hence, the purpose of the notice statutes remains unimpaired.

This analysis is in accord with the principle that in the absence of a restrictive statutory provision, the insurer and insured have the right to specify in their insurance contract the method by which it can be terminated. *Department of Labor & Indus. v. Northwestern Mut. Fire Ass'n,* 13 Wn.2d 288, 291, 124 P.2d 944 (1942). In *Glens Falls Ins. Co. v. Founders' Ins. Co., supra,* relied upon by Rainier, the court stated the manner specified in the insurance code by which a policy may be canceled does not restrict the rights of rescission to the methods contained therein. Superimposed upon the code are the provisions which govern contracts generally. Moreover, in several cases relied upon by Rainier there were state statutes, like Washington's, which required written notice of cancellation by the insurer and/or insured; *Ector v. American Liberty Ins. Co., supra* (Ga. Code Ann. § 33–24–45 (effective 1968)); *Lee v. Ohio Cas. Ins. Co., supra* (Ill. Ann. Stat. ch. 73, §§ 143.15, .16 (effective 1976)); *Franklin v. Carpenter, supra* (Minn. Stat. Ann. §§ 72A.142, .143 (effective 1968)); nevertheless, those courts agreed a policy of insurance may be canceled by its terms or by mutual consent. We conclude, therefore, Safeco's automatic termination provision is not contrary to the notice requirements of RCW 48.18.

Additionally, Rainier argues Safeco's automatic termination provision is repugnant to RCW 48.22.030, the underinsured motorist statute, which requires the insured to reject its coverage in writing.[2] Rainier contends the automatic

---

[2]RCW 48.22.030 provides in part:

"(3) Except as to property damage, coverage required under subsection (2) of

termination provision is a restriction upon underinsured motorist coverage which is against public policy and therefore void. *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972). On the other hand, Safeco asserts the automatic termination provision is not intended to restrict the underinsured motorist provision but rather is a condition upon which the existence of coverage depends. We agree.

The purpose of the underinsured motorist statute is to allow an injured party to recover those damages he would have received had the responsible party been insured with liability limits as broad as the injured party's statutorily mandated coverage limits. *Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 707 P.2d 125 (1985). Any ambiguities in the policy will be interpreted in favor of the insured. *McDonald Indus., Inc. v. Rollins Leasing Corp.,* 95 Wn.2d 909, 913, 631 P.2d 947 (1981). The issue here is not whether there is an exclusion or restriction on the underinsured motorist coverage, nor is it whether there is an ambiguity as to coverage. The issue is whether there is coverage at all. The automatic termination provision is not just a restriction on underinsured coverage, but voids the entire policy to the extent there is similar coverage under another policy. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 549 P.2d 9 (1976); *Travelers Indem. Co. v. Republic Ins. Co.,* 70 Misc. 2d 208, 333 N.Y.S.2d 303 (1972). In other words, it is a condition upon which Safeco assumes liability. If Safeco's automatic termination provision left Mr. Taxter without underinsured motorist coverage, it would be repugnant to the statute, but it does not. He is protected by the underinsured motorist coverage in his Rainier policy. In these circumstances, the provision is not repugnant to the statute.

Second, it is contended the "other insurance" language in the automatic termination provision is invalid because it is

this section shall be in the same amount as the insured's third party liability coverage unless the insured rejects all or part of the coverage as provided in subsection (4) of this section."

ambiguous when considered in connection with the "other insurance" provisions contained in the same policy. We disagree.

The automatic termination provision reads:

6. TERMINATION.

. . .

(c) Automatic Termination.

. . .

If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

One of the "other insurance" provisions states:

If there is other applicable liability insurance we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

It is argued the latter provision assumes coverage while the automatic termination provision takes it away. They also contend other cancellation provisions in the policy in effect adopt the statutory notice requirements while the automatic termination provision ignores the notice statutes. Consequently, it is argued the provisions in the Safeco policy conflict creating ambiguities mandating construction against Safeco and in favor of coverage. We disagree.

In construing an insurance contract, the provisions of the entire contract should be construed together in an effort to give force and effect to each clause. *Kiniski v. Archway Motel, Inc.*, 21 Wn. App. 555, 560, 586 P.2d 502 (1978), *review denied*, 91 Wn.2d 1023 (1979). When so construed, it is clear Safeco's "other insurance" provisions apply to all other insurance which covers an accident, not just the insured's, *e.g.*, a passenger injured in an accident is covered by his own policy, the driver's policy, and perhaps by the policy carried by the driver of the other vehicle. In fact, insertion of this pro rata clause is specifically authorized by RCW 48.22.030(6), the underinsured motorist stat-

ute, where it states:

> The policy may provide that if an injured person has other similar insurance available to him under other policies, the total limits of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages.

Courts confronted with policy provisions prohibiting other insurance and a pro rata clause have construed the policy as a whole and found it clear and unambiguous. *Farmers Mut. Ins. Co. v. Summers,* 143 Ind. App. 450, 241 N.E.2d 154 (1968); *Songer v. State Farm Fire & Cas. Co.,* 91 Ill. App. 3d 248, 414 N.E.2d 768 (1980); *Allstate Ins. Co. v. Republic Ins. Co.,* 78 Misc. 2d 668, 357 N.Y.S.2d 630 (1974). The "other insurance" provision becomes operative when the insurer agrees to share the risks with other insurers but when the automatic termination provision prevents such sharing, the other insurance clause is simply inoperative. *Webb v. Stonewall Ins. Co.,* 347 S.W.2d 506, 507 (Ky. 1961); *Allstate Ins. Co. v. Republic Ins. Co., supra.* Thus, construing the policy as a whole, we find no ambiguity and conclude the automatic termination provision is valid and effective.

Finally, Rainier contends the court erred by holding it is not entitled to set off against its underinsured motorist coverage the amount paid to the Taxters under its PIP coverage as the policy specifically authorizes the offset. To the contrary, the Taxters contend that provision constitutes a restriction on the mandatory underinsured motorist limits and is contrary to public policy. RCW 48.22.030; *Nationwide Mut. Ins. Co. v. Kelleher,* 22 Wn. App. 712, 591 P.2d 859 (1979). They assert the trial court was correct. Since this is a question of first impression, we are guided in resolving the issue by cases construing the uninsured motorist statute to the extent they are compatible with the underinsured motorist statute. *Britton v. Safeco Ins. Co. of Am., supra.*

We turn then to *Thiringer v. American Motors Ins. Co.,* 91 Wn.2d 215, 588 P.2d 191 (1978), an uninsured

motorist case. There, the insured reached a settlement with the wrongdoer after having received a PIP payment from his own insurer. The court held the insurer is entitled to be reimbursed to the extent its insured recovers payment for the same loss from the tortfeasor, but only to the extent of any excess remaining after the insured is fully compensated for his loss. Since the insured had recovered less than his total damages, the insurer was not entitled to the PIP set-off. In *Nationwide Mut. Ins. Co. v. Kelleher, supra,* the court followed the *Thiringer* reasoning that the public policy which prevents a less than "make whole" recovery under the uninsured motorist statute applies with equal cogency to the underinsured statute. This position was recently affirmed in *Britton,* at 530, and is in accord with 12A G. Couch, *Insurance* § 45.652, at 213 (2d ed. 1981), where he states: "deductions of payments under medical coverages, whether included in the automobile policy or otherwise, are normally not allowed unless the loss is less than the policy limits." *Van Tassel v. Horace Mann Mut. Ins. Co.,* 296 Minn. 181, 207 N.W.2d 348 (1973); *Talbot v. State Farm Mut. Auto. Ins. Co.,* 291 So. 2d 699 (Miss. 1974); *Dabney v. Home Ins. Co.,* 643 S.W.2d 386 (Tex. 1982); *Travelers Indem. Co. v. Lucas,* 678 S.W.2d 732 (Tex. Ct. App. 1984); *Nelson v. Employers Mut. Cas. Co.,* 63 Wis. 2d 558, 217 N.W.2d 670 (1974).

We find Rainier's reliance on *Rodenbough v. Grange Ins. Ass'n,* 33 Wn. App. 137, 652 P.2d 22 (1982), and *Britton* is misplaced. *Rodenbough* dealt with the validity of a PIP anti–stacking provision; *Britton,* on the other hand, stands for the position we take that any setoff against underinsured motorist coverage which has the effect of restricting coverage is against public policy and void. *Britton,* at 531. We conclude that a PIP setoff against underinsured motorist coverage is valid only when the extent of the insured's damages are less than his policy limits. Where the insured's damages exceed those limits, public policy dictates against any PIP offset. Because the record is silent as to the extent of Mr. Taxter's damages, we remand for a determination on

this issue.

In light of our decision that the Safeco policy was terminated as to similar coverage provided by the Rainier policy, we need not reach the other issues raised.

Remanded.

McINTURFF and THOMPSON, JJ., concur.

Review by Supreme Court pending January 30, 1987.