OHIO FARMERS INSURANCE COMPANY et al., Appellees,

v.

ESTATE OF BRACE et al., Appellants.

[Cite as *Ohio Farmers Ins. Co. v. Estate of Brace* (1997), 116 Ohio App.3d 395.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE06–759.

Decided Jan. 14, 1997.

*Lane, Alton & Horst, Jack R. Alton* and *William Scott Lavelle*, for appellees.

*Michael F. Colley Co., L.P.A., David I. Shroyer* and *Thomas F. Martello, Jr.*, for appellants.

DESHLER, Judge.

This is an appeal by defendants, Diane Brace and the estate of David C. Brace, from a summary judgment granted by the Franklin County Court of Common Pleas in favor of plaintiffs, Ohio Farmers Insurance Company and Westfield Insurance Company.

The case was submitted to the trial court on an agreed stipulation of facts. On October 8, 1993, a policy of insurance was issued by Westfield Insurance Company to David C. Brace and Diane Brace (collectively "defendants"), with a policy period from October 8, 1993 to October 8, 1994. This policy (the "Westfield policy") was purchased from an agent in Mt. Sterling, Ohio. The defendants resided in West Jefferson, Ohio, at the time the Westfield policy was issued.

In July 1994, defendants moved their residence from West Jefferson to North Myrtle Beach, South Carolina. On July 12, 1994, defendants purchased automobile insurance from Allstate Insurance Company ("Allstate"). The Allstate policy, which was purchased from an agent in North Myrtle Beach, was effective from July 12, 1994 to January 12, 1995.

On July 20, 1994, Diane Brace sustained injuries after being involved in a collision with an automobile owned and operated by Jean Garrison. The accident occurred in North Myrtle Beach. The vehicle operated by Diane Brace was specifically identified as one of the "covered vehicles" under the Westfield policy. The vehicle was also specifically identified as one of the "covered vehicles" under the Allstate policy.

Garrison had a policy with State Farm Insurance Company ("State Farm"), carrying a liability limit of $25,000. State Farm paid to defendants the full $25,000 liability limit of Garrison's policy. Allstate has paid to defendants the sum of $30,000, representing its full policy limit for uninsured/underinsured motorist benefits. The total value of defendants' claims exceeds $155,000.

On January 5, 1995, plaintiffs filed a complaint for declaratory relief, seeking in part a declaration that insurance coverage was not available under the Westfield policy for the accident involving Diane Brace in South Carolina due to the operation of the "automatic termination" clause in the policy. On December 19,

1995, defendants filed a motion for summary judgment. Plaintiffs subsequently filed their motion for summary judgment on January 3, 1996.

On April 23, 1996, the trial court rendered its decision, granting summary judgment in favor of plaintiffs. Specifically, the trial court held that, pursuant to the automatic termination provision in the Westfield policy, such policy terminated on July 12, 1994; therefore, at the time of Diane Brace's accident on July 20, 1994, the defendants were not insured by plaintiffs. The decision of the trial court was journalized by judgment entry filed May 13, 1996.

On appeal, defendants set forth the following two assignments of error for review:

"FIRST ASSIGNMENT OF ERROR:

"The trial court erred in granting summary judgment in favor of plaintiffs-appellees, to the prejudice of defendants-appellants, by failing to find that the 'Automatic Termination' provision of the insurance contract, which provided for cancellation of the policy immediately upon the insured obtaining other 'similar' insurance for the 'covered auto,' was void *ab initio* insofar as the provision conflicted with the notice requirements set forth in Ohio R.C. 3937.32 and Ohio R.C. 3937.33.

"SECOND ASSIGNMENT OF ERROR:

"The trial court erred in granting summary judgment in favor of plaintiffs-appellees, to the prejudice of defendants-appellants, by failing to find that 'Other Insurance' and 'Automatic Termination' provisions of the insurance contract at issue created ambiguity which should be construed in favor of the insured, which would have resulted in a finding that the defendants-appellants were covered under the policy at issue in the case at bar."

Under the first assignment of error, defendants argue that the trial court erred in granting summary judgment in favor of plaintiffs by failing to find that the "automatic termination" clause, contained in the Westfield policy, conflicts with Ohio's notice of cancellation statute.

The Westfield insurance policy at issue contains a clause entitled "Automatic Termination," which provides as follows:

"If you obtain other insurance on **your covered auto**, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance."

R.C. 3937.32 states in part that:

"No cancellation of an automobile insurance policy is effective, unless it is pursuant to written notice to the insured of cancellation. Such notice shall contain:

"(A) The policy number;

"(B) The date of the notice;

"(C) The effective date of cancellation of the policy, which shall not be earlier than thirty days following the date of the notice;

"(D) An explanation of the reason for cancellation and the information upon which it is based, or a statement that such explanation will be furnished to the insured in writing within five days after receipt of his written request therefor to the insurer[.] * * * "

Defendants contend that the plain meaning of the above statutory language indicates that an insurer may not cancel a policy of insurance without first giving notice to the insured of its intent to cancel the policy. Defendants argue that the automatic termination clause in the policy at issue is repugnant to this statutory provision, as it purports to empower the insurer to cancel a policy immediately, without notice to the policyholder.

The issue raised by defendants has been previously addressed, and rejected, by other Ohio appellate courts. In *Stith v. Milwaukee Guardian Ins., Inc.* (1988), 44 Ohio App.3d 147, 541 N.E.2d 1071, the court held that the provisions of R.C. 3937.31 *et seq.*, which govern the method of cancellation of motor vehicle insurance, were inapplicable when cancellation was predicated upon the insured's purchase of other insurance pursuant to an automatic termination provision of a policy.[1] Specifically, the court in *Stith* held as follows:

"Stith argues that despite the 'automatic termination' provision in the policy, Guardian could not cancel his insurance without the appropriate written notice required by R.C. 3937.31 *et seq.* We do not agree that R.C. 3937.31 *et seq.* governs the method of cancellation in all situations. It is apparent that the purpose of this statute is to provide the insured with adequate notice of an impending cancellation, thus affording the opportunity to obtain other automobile insurance. However, when the automobile insurance cancellation is predicated upon the insured's purchase of other insurance, the purpose of the statute remains unimpaired. * * * We hold, therefore, that such an automatic termination provision is valid." (Citation omitted.) *Id.* at 148–149, 541 N.E.2d at 1073.

---

1. We note that the automatic termination provision in *Stith v. Milwaukee Guardian Ins., Inc.* (1988), 44 Ohio App.3d 147, 541 N.E.2d 1071, is almost identical to the automatic provision in the instant case.

We agree with the above rationale and find that the automatic termination provision in the instant case was not in conflict with the provisions of R.C. 3937.31 or 3937.32. As noted by the court in *Stith,* the purpose of the statute is to provide the insured with adequate notice of an impending cancellation; however, where the action of the insured results in termination of coverage predicated upon the insured's obtaining other insurance, the purpose of the statute is not impaired. See, also, *Rose v. Shelby Ins. Co.* (Oct. 28, 1992), Richland App. No. 92–CA–8, unreported, 1992 WL 318842 (citing with approval the holding of *Stith* and finding that automatic termination provision did not violate the provisions of R.C. 3937.31); *Turner v. Progressive Specialty Ins. Co.* (1991), 72 Ohio App.3d 381, 594 N.E.2d 986 (statutory requirements of notice of cancellation of automobile policy do not apply if insured initiates cancellation).

Defendants' first assignment of error is overruled.

■ Under the second assignment of error, defendants contend that the automatic termination provisions contained in the Westfield policy, when read in conjunction with the policy's "other insurance" provisions, create an ambiguity that should be interpreted in favor of the insured.

At issue is the "automatic termination" clause, previously cited under the first assignment of error, and the policy's "other insurance" provisions. The specific "other insurance" clause cited by defendants in their brief provides as follows:

"If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability available shall be the highest applicable limit of liability under any one policy, and we will only pay our share of the loss. Our share is the proportion that our limits of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

In support of their contention that the "other insurance" clause in the Westfield policy creates an ambiguity between it and the automatic termination clause, defendants cite *Pooler v. Shelby Mut. Ins. Co.* (Dec. 23, 1985), Montgomery App. No. 9407, unreported, 1985 WL 4759, and the dissenting opinion in *Rose, supra.* In *Pooler,* the court, in construing an "automatic termination" clause in conjunction with an "other insurance" clause in a policy, upheld the trial court's determination that the clauses were ambiguous and that "an average person could reasonably conclude that * * * [the insurer] would provide coverage for its proportionate share where another policy is purchased * * *." *Id.*

In *Rose,* the majority, relying upon the rationale of *Stith, supra,* concluded that an automatic termination provision was enforceable and not ambiguous. The dissent in *Rose* contended that the inclusion of provisions entitled "other insurance" in the policy created an ambiguity between it and the automatic termi-

nation clause, concluding that, "[t]hough the Automatic Termination clause is unambiguous when read alone, when the policy is reviewed as a whole including the 'OTHER INSURANCE' provisions, I believe ambiguity is created." *Rose, supra* (William B. Hoffman, J., dissenting).

In the present case, the trial court, while noting the holding in *Pooler,* found more persuasive the reasoning of other jurisdictions that have held that such provisions can be read in harmony and do not create an ambiguity. Specifically, the trial court relied upon the holdings in *Stith, supra; Phillips v. Farmers Ins. of Columbus, Inc.* (July 13, 1995), Cuyahoga App. No. 68187, unreported, 1995 WL 415247, and the majority decision in *Rose, supra.*

In *Stith,* the plaintiff-insured argued that the "automatic termination" clause, under which the insurer denied coverage, was in direct conflict with the policy's "other insurance" clause. The court rejected that contention, holding:

"We are cognizant of the rule that in construing an insurance contract, such construction must be given as will harmonize and give effect to all its provisions, and that no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible. * * * We believe that the provisions in the Guardian policy may be read clearly and unambiguously. Guardian cites cases in other jurisdictions in which a policy included 'automatic termination' and 'other insurance' clauses and where the court construed the policy as a whole and found it to be clear and unambiguous. *Taxter v. Safeco Ins. Co.* (1986), 44 Wash.App. 121, 721 P.2d 972 * * *. The *Taxter* court explained that, despite the 'automatic termination' provision, the 'other insurance' provisions apply ' * * * to all other insurance which covers an accident, not just the insured's, *e.g.,* a passenger injured in an accident is covered by his own policy, the driver's policy, and perhaps by the policy carried by the driver of the other vehicle. * * * ' *Taxter, supra,* at 129, 721 P.2d at 976.

"Thus, in situations where the 'automatic termination' clause does apply, the 'other insurance' clause is simply inoperative. We agree with this rationale and hold that these clauses may be read in a clear and unambiguous fashion." (Citations omitted.) *Stith, supra,* 44 Ohio App.3d at 148, 541 N.E.2d at 1072-1073.

The court in *Phillips,* relying upon the holding in *Stith,* similarly concluded that the provisions of an "automatic termination" clause and "other insurance" clause "may be read clearly and unambiguously." *Phillips, supra.* As previously noted, the majority in *Rose* also found persuasive the rationale of *Stith* in finding that an "automatic termination" clause was not ambiguous despite the presence of an "other insurance" provision in the policy.

The relationship between a clause prohibiting additional insurance and a clause providing for proration of the loss where there is other insurance coverage was

discussed in *Allstate Ins. Co. v. Republic Ins. Co.* (1974), 78 Misc.2d 668, 670, 357 N.Y.S.2d 630, 632, wherein the court quoted the following passage from a leading treatise:

" 'There is no inconsistency * * * between two clauses in a policy which provide respectively for the prorating of any claim in the event of more than one policy on the property and that additional insurance is prohibited without the consent of the insurer thereto, for while prorata clauses contemplate the possibility of additional insurance, they do not permit it and are not in conflict with other policy provisions relative to other insurance. And, since a prorata clause applies only in case the defendant insurer's policy is valid, it does not constitute a waiver of a provision for forfeiture in case of additional insurance being taken out without the consent of the insurer.' Couch on Insurance, 2d, § 37:1300, p. 21."

In the present case, we are in agreement with the trial court's reliance on the reasoning in *Stith* regarding this issue. The "other insurance" clause in the Westfield policy, providing for a proportionate sharing, takes effect only if "this policy and any other policy providing similar insurance apply." The "automatic termination" provision, however, by its very terms, prevents such sharing. Thus, in situations such as the present, "where the 'automatic termination' clause does apply, the 'other insurance' clause is simply inoperative." *Stith, supra,* 44 Ohio App.3d at 148, 541 N.E.2d at 1072. Based upon the foregoing, we conclude that the trial court did not err in finding that the automatic termination clause and the other insurance provision of the Westfield policy can be read in harmony and unambiguously.

▮▮▮ Defendants further contend, under the second assignment of error, that the trial court erred in granting summary judgment in favor of plaintiffs because language in the Westfield policy pertaining to "similar insurance" creates an ambiguity. However, a review of the record indicates that defendants did not raise this particular argument in their motion for summary judgment or in their response to plaintiffs' motion for summary judgment; consequently, the trial court did not address or rule upon that issue. It is well settled that no new issues can be raised in the appellate court that were not raised before the trial court. *Niemann v. Cooley* (1994), 93 Ohio App.3d 81, 89, 637 N.E.2d 943, 948–949. "A party may not assert a new legal theory for the first time before an appellate court." *AMF, Inc. v. Mravec* (1981), 2 Ohio App.3d 29, 32, 2 OBR 32, 34, 440 N.E.2d 600, 603. As the issue regarding the policy's "similar insurance" language was not properly raised by defendants in the trial court, we decline to consider it for the first time on appeal.

Upon review of the stipulated facts and based upon the authority relied upon by the trial court, we find that reasonable minds could only conclude that, at the

time of Diane Brace's accident on July 20, 1994, defendants were insured under the Allstate policy and not the policy purchased from plaintiffs.

Based upon the foregoing, defendants' first and second assignments of error are overruled, and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

CLOSE and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.