BEDEL, Admr., Appellant,

v.

UNIVERSITY OB/GYN ASSOCIATES, INC. et al., Appellees;

University of Cincinnati Hospital, Holmes Hospital Division.

[Cite as *Bedel v. Univ. OB/GYN Assoc., Inc.* (1991), 76 Ohio App.3d 742.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900933.

Decided Dec. 11, 1991.

*Condit & Dressing Co., L.P.A.,* and *James J. Condit,* for appellant.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A.,* and *Pamela Popp,* for appellees.

*Per Curiam.*

The plaintiff-appellant, James E. Bedel, appeals from the trial court's order granting the motion for summary judgment filed by the defendants-appellees, University OB/GYN Associates, Inc., and Dr. Randall T. Kelly. The plaintiff argues that the motion was erroneously granted because genuine issues of material fact exist as to whether the decedent, Mary Jacqueline Potts, was adequately informed of the risks associated with amniocentesis prior to consenting to the performance of that procedure.

On July 1, 1987, the decedent, five months' pregnant at the time, was referred to Holmes Hospital in Cincinnati for an ultrasound and an amniocentesis. Present for the testing were Dr. Bazi, a third-year resident physician, Deni Schultz, an ultrasonographer, and Dr. Kelly, a physician specializing in obstetrics, gynecology and maternal-fetal medicine. Because the results of the ultrasound were unremarkable, a decision was made to proceed with an amniocentesis to determine whether the fetus had developed any physical abnormalities. The decedent was presented with and signed three consent forms which indicated that Dr. Kelly would perform the procedure and that various complications could occur as a result of the testing. The record reveals that the procedure was performed by Dr. Bazi and that the decedent, at that time, experienced no adverse reaction. The following day, however, the decedent was hospitalized after complaining of fever and cramping. She

died seventeen days later. The coroner determined the cause of death to be sepsis and pneumonia.

The plaintiff filed the instant medical negligence action, alleging that the decedent was not properly informed of the hazards associated with an amniocentesis. After a period of discovery, the defendants filed a motion for summary judgment, which was granted by the trial court. In his single assignment of error, the plaintiff challenges the trial court's ruling by arguing that the three informed-consent forms fail to name the physician who actually performed the procedure and that genuine issues of material fact exist as to whether the forms set forth the "reasonably known risks" associated with an amniocentesis. This assignment of error is well taken in part.

"The tort of lack of informed consent is established when:

"(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;

"(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and

"(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 17 OBR 281, 477 N.E.2d 1145, syllabus; see *Hartman v. McNeill* (June 8, 1988), Hamilton App. No. C–870661, unreported, 1988 WL 59826.

A particular risk or danger is material, for purposes of the disclosure rule, when a reasonable person in the patient's condition would likely attach significance to it in deciding whether to undergo a proposed course of treatment. *Kilgallion v. Children's Hosp. Med. Ctr.* (Apr. 15, 1987), Hamilton App. No. C–850644, unreported, 1987 WL 9742. Generally, the plaintiff has the burden of proving by expert medical evidence what a reasonable medical practitioner of the same discipline, practicing in the same or similar communities under the same or similar circumstances, would have disclosed to his patient about the risks incident to a proposed treatment, and of proving that the physician departed from that standard. *Pierce v. Goldman* (May 17, 1989), Hamilton App. No. C–880320, unreported, 1989 WL 50772. Proof of the recognized standards of the medical community must be provided through expert testimony. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673.

■ In the instant case, the plaintiff argues, initially, that the consent forms fail as "informed consents" under R.C. 2317.54 because they fail to set forth the name of the physician who actually performed the amniocentesis. While we agree that the consent forms do not accurately reflect the appropriate name and, for this reason, are not entitled to the presumption of validity afforded by R.C. 2317.54, we are not persuaded that such a deviation is sufficient to give rise to a triable claim of lack of an informed consent under the circumstances of the present case. Even if we assume that identity is a factor relevant to liability under the standard of *Nickell v. Gonzalez, supra,* Dr. Kelly indicated in his affidavit that he consulted with the decedent prior to the amniocentesis and that she was informed, at that time, that Dr. Bazi would be performing the procedure. Since the plaintiff has not offered evidence to controvert the testimony of Dr. Kelly and since informed consent can also be provided orally, *Cardinal v. Family Foot Care Centers, Inc.* (1987), 40 Ohio App.3d 181, 532 N.E.2d 162, we conclude that the decedent, as a matter of law, was informed of and consented to Dr. Bazi's performance of the amniocentesis.

■ The plaintiff next maintains that the decedent died as a result of an amniotic-fluid embolism, and that summary judgment was improvidently granted by the trial court because genuine issues of material fact exist as to whether the decedent was adequately informed of that risk prior to providing her consent to the amniocentesis. In support of this assertion, the plaintiff argues that the written consent forms do not mention amniotic-fluid embolism as a risk of amniocentesis even though the report of the Hamilton County Coroner lists "amniotic fluid embolism and diffuse alveolar damage" as the second of his six pathological diagnoses of the decedent. The plaintiff also relies on the affidavit of Dr. Nicholas Criares, an obstetrician, which states that amniotic-fluid embolism is a known complication of amniocentesis; that proper medical procedure required informing the patient of this risk prior to obtaining consent and performing the procedure; that failure to inform the patient of this risk was a violation of the appropriate standard of care; and that the decedent developed amniotic-fluid embolism and infection and subsequently died.

The defendants, on the other hand, claim that the forms at issue informed the decedent that complications such as infection, bleeding, leakage of fluid, injury to the mother or fetus, or premature labor could arise as a result of the performance of an amniocentesis. Furthermore, the defendants point out that the coroner ultimately found the decedent's cause of death to be sepsis (an infection) and pneumonia. They contend, therefore, that the decedent was advised of the risk that eventually led to her demise. Moreover, Dr. Kelly

stated in his affidavit that the care and treatment of the decedent satisfied the recognized standards of care that apply to an obstetrician under the circumstances.

In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio held:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

Although the moving party under Civ.R. 56 is not obligated to negate every assertion of fact, the party seeking summary judgment bears the initial responsibility of affirmatively demonstrating that, with respect to every essential issue of each count in the complaint, there is no genuine issue of fact. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

After reviewing the record in the instant case and considering the arguments of the parties, we are not convinced that the defendants were entitled to judgment as a matter of law. It is apparent from the affidavits of the expert witnesses that genuine issues of material fact exist as to whether Dr. Kelly failed to disclose a material risk (amniotic-fluid embolism) to the decedent and, also, whether that risk materialized and was the proximate cause of the decedent's death. We are cognizant of the defendants' argument challenging the competency of the plaintiff's expert witness. Our review of the record reveals, however, that that claim was not presented below. Thus, we will not address the matter for the first time on appeal. See *Lunsford v. Mussio* (May 6, 1987), Hamilton App. No. C–860356, unreported, 1987 WL 10887.

Accordingly, the judgment of the trial court is reversed and the cause is remanded for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., KLUSMEIER and UTZ, JJ., concur.