**TIMOCK, Admr.,**

v.

**BOLZ, Appellant; Heritage Mutual Insurance Company et al., Appellees.**

[Cite as *Timock v. Bolz* (1996), 115 Ohio App.3d 283.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69672.

Decided Oct. 15, 1996.

*Lawrence G. Sheehe, Jr.,* for Cheryl Timock.

*Licata & Crosby Co., L.P.A., Wayne J. Belock* and *Ellyn T. Tamulewicz,* for appellant.

*Joseph Tira* and *Edward J. Stoll, Jr.,* for appellee Heritage Mutual Insurance Company.

*Davis & Young Co., L.P.A.,* and *Gregory H. Collins,* for appellee Cincinnati Insurance Company.

---

O'DONNELL, Presiding Judge.

This is the second time this case has been appealed. Initially, this court remanded the matter for resolution of pending counterclaims. The trial court then dismissed all remaining claims with a *nunc pro tunc* judgment entry, thereby preserving for appellate review two summary judgment rulings.

The administrator of the estate of Richard Bolz now appeals from the trial court's grant of summary judgment in favor of the Heritage Mutual and Cincinnati Insurance Companies for breach of contract in denying coverage and in failing to provide a defense against a wrongful death claim filed on behalf of Richard's wife, Beverly. That claim arose from an automobile accident that occurred in Parma, Ohio on February 17, 1990, when Richard Bolz apparently lost control of the 1987 Pontiac Firebird motor vehicle he was operating and struck a tree, killing himself and his wife, who was a passenger in that vehicle. As a result of that accident, the estate of Beverly Bolz sued her husband's estate for wrongful death and also sued the Heritage and Cincinnati insurance companies for breach of contract. Richard's estate also filed cross-claims against each of the carriers, alleging entitlement to a defense to the complaint. During the pendency of this case in the trial court, Beverly's estate amended its complaint to allege uninsured-motorist claims against each carrier, and Cincinnati interpleaded $100,000 as uninsured-motorist proceeds, but maintained that it owed no duty to defend against the wrongful death liability claim.

Cincinnati Insurance then moved for summary judgment, and Heritage moved to dismiss, and the trial court granted summary judgment to both carriers, thereby determining that neither owed a duty to defend Richard's estate against the wrongful death claim of Beverly's estate.

Richard's estate now appeals the grant of summary judgment to Heritage Mutual and Cincinnati Insurance companies, alleging entitlement to a defense from each carrier, and assigns the following assignment of error:

I

"The trial court erred in granting summary judgment in favor of appellee insurance companies because the estate of Beverly Bolz's complaint and subsequent pleadings established a cause of action for which one or both appellee insurance companies owed appellant Jakob Bolz, Jr. a duty to defend."

Appellant urges that since both carriers insured the Pontiac Firebird on the accident date, each owes a duty to defend because the wrongful death complaint raises matters arguably within policy coverage.

Heritage maintains that its policy automatically terminated upon the effective date of the Cincinnati policy, and Cincinnati contends that its relative exclusion clause precludes coverage for Beverly's wrongful death. Both carriers believe that the trial court correctly granted summary judgment.

Thus, we are asked to determine whether either carrier owes a duty to defend appellant and thus whether the trial court properly granted summary judgment.

The standard of review for summary judgment has been described in *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, where the Supreme Court held:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

Further, the court in *Bedel v. Univ. OB/GYN Assoc., Inc.* (1991), 76 Ohio App.3d 742, 746, 603 N.E.2d 342, 345, held:

"Although the moving party under Civ.R. 56 is not obligated to negate every assertion of fact, the party seeking the summary judgment bears the initial responsibility of affirmatively demonstrating that, with respect to every essential issue of each count in the complaint, there is no genuine issue of fact. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798." See, also, *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, where the court reiterated these standards.

The parties to this litigation generally agree as to the facts of the case but disagree as to whether Heritage Mutual or Cincinnati Insurance Company is entitled to judgment as a matter of law. Thus, we need to review the law relative to a carrier's duty to defend against a complaint.

In *Knapp v. State Farm Mut. Auto. Ins. Co.* (1982), 6 Ohio App.3d 53, 453 N.E.2d 1110, the court stated in paragraph one of the syllabus:

"An insurer is required to defend a civil action against one of its insureds where the allegations of the complaint bring the action within the coverage of a policy regardless of the ultimate determination of its liability to the insured; however, where from a reading of the complaint and the policy it is clear that there is no set of facts which the plaintiff could prove under the complaint that

would bring the defendant-insured within the coverage of the policy, then there is no duty to defend."

In this case the record reveals that Heritage Mutual had insured the Bolz vehicle and a current premium had been paid at the time of the accident. Further, on February 14, 1990, three days prior to the fatal accident, Cincinnati Insurance issued a new policy of insurance on that vehicle.

Heritage now argues that the automatic-termination clause in its policy ended its coverage when the Cincinnati policy became effective. That clause states:

"If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. See the Heritage Mutual Insurance Policy, Part F–General Provisions, Termination."

In *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus states:

"Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."

Considering the language in the automatic-termination provision of the Heritage policy, no manifest absurdity results from giving the words their ordinary meaning.

Finally, in *Taxter v. Safeco Ins. Co.* (1986), 44 Wash.App. 121, 721 P.2d 972, the court considered a similar issue and determined that the voluntary act of an owner securing new insurance for a term commencing before expiration of an existing term constituted a policy cancellation. The court stated, at 126, 721 P.2d at 974:

"We cannot ignore the language in the contract nor revise the contract under the theory of construing it. * * * The Taxters consented to these terms when they obtained the Safeco policy. They cannot claim lack of notice when they had either actual or constructive knowledge of it."

The court in that case concluded that the automatic-termination provision voids the entire policy to the extent there is similar coverage under another policy.

Similarly, in this case, when Richard Bolz purchased the Heritage Mutual Insurance policy, he accepted the automatic–termination language, which became effective when he voluntarily obtained the new policy from Cincinnati. The meaning of the automatic-termination language is evident from the face of the document, and we are obligated to enforce it. See, also, *Stith v. Milwaukee Guardian Ins., Inc.* (1988), 44 Ohio App.3d 147, 541 N.E.2d 1071; *Rose v. Shelby Ins. Co.* (Oct. 28, 1992), Richland App. No. 92–CA–8, unreported, 1992 WL

318842; and *Phillips v. Farmers Ins. of Columbus, Inc.* (July 13, 1995), Cuyahoga App. No. 68187, unreported, 1995 WL 415247. Hence, we conclude that the trial court did not err in entering summary judgment in favor of the Heritage Mutual Insurance Co.

In its brief, Cincinnati contends that it owes no duty to defend claims arising out of bodily injury to Beverly because of the clause excluding relatives. The relative exclusion clause states:

"C. We do not provide Liability coverage for: 1. You or any family member for bodily injury to you or any family member * * *."

The policy further defines a family member as "a person related to you by blood, marriage or adoption, who is a resident of your household." Cincinnati urges that no liability coverage exists for Beverly's wrongful death because she was a family member living in Richard's household at the time of her death.

Appellant believes Cincinnati owes a duty to defend against liability claims of Beverly's estate because her heirs are not members of her household and thus are not covered by the relative exclusion clause of that policy. Therefore, appellant concludes that Cincinnati owes a duty to defend against those claims. The issue then is whether Cincinnati has a duty to defend Richard's estate against claims of Beverly's estate or, stated differently, whether those claims in the complaint bring the action within the coverage of the policy.

Here, the policy states:

"PART A—LIABILITY COVERAGE

"INSURING AGREEMENT

"We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability has been exhausted.

A "covered person" is defined in the policy as "1. You or any family member for the ownership maintenance or use of any auto * * *." And "family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household." This language covered Richard, but the language of Section C quoted above excluded Beverly as a family member in his household, and accordingly, Cincinnati has no obligation to pay liability claims of Beverly's estate. Hence, for purposes of coverage, Richard became an uninsured motorist as to Beverly's claim.

Finally, as the court held in *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, at the syllabus:

"An automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law."

In this case, immediately upon the estate's filing of an amended complaint raising an uninsured motorist claim, the Cincinnati Insurance Company interpleaded $100,000 as uninsured-motorist proceeds. This sum was paid to the estate of Beverly for the benefit of her heirs, as evidenced by the journal entry which is part of the record before us.

Accordingly, appellant's claims against Cincinnati Insurance for wrongful death asserted by Beverly's heirs could not have been successfully presented against the Cincinnati Insurance Company because the liability was subject to a valid exclusion. As a result, Cincinnati had no duty to defend against the liability claim. Accordingly, there is no set of facts which appellant can prove which would bring the defendant-insured within policy coverage.

We therefore conclude that the trial court properly granted summary judgment in favor of Heritage Mutual Insurance because of the automatic-termination clause contained in the policy and in favor of the Cincinnati because of the relative exclusion clause, which precludes prosecution of an action that the decedent could not have maintained. Finally, payment of the uninsured-motorist proceeds to Beverly's estate resolved all pending claims against Cincinnati. Accordingly, the trial court correctly granted a summary judgment in this case, and that judgment is affirmed.

*Judgment affirmed.*

KARPINSKI and TIMOTHY E. MCMONAGLE, JJ., concur.