OPINION
Defendant-appellant Imperial Casualty Indemnity Company appeals from the trial court orders that entered judgment in favor of plaintiffs-appellees Cuyahoga Metropolitan Housing Authority, Claire E. Freeman, Brenda Harper, Robert C. Townsend II, Karen Coats, Louise Harris and Consuelo Sousa (hereinafter referred to in the singular)[1] on claims for declaratory judgment and for attorney fees expended in pursuing the action.
Appellant argues the trial court improperly determined appellant had a duty pursuant to insurance policies it issued to appellee to defend appellee in a lawsuit filed in federal court. Appellant first contends the facts alleged in the federal lawsuit demonstrate the policies were no longer in effect at the time of the complained-of injuries, thus precluding any duty to defend appellee. Appellant further contends the policies contained an applicable exclusion, thus negating any duty to defend. Appellant also asserts the trial court improperly granted appellee's request for attorney fees. Since this court finds appellant's first contention to have merit, the order of the trial court is reversed.
Appellee owns and administers housing subsidized and funded by the federal government for the benefit of lower-income families. Appellee purchased comprehensive insurance from appellant for the period from December 1, 1981 to December 1, 1984 under the following general liability policies: (1) Number IGL1016; (2) Number 1GL1039; and (3) Number 1GL1133.
Each policy issued to appellee by appellant was substantially similar, and each contained the following pertinent provisions:
COVERAGE A-BODILY INJURY LIABILITY
 COVERAGE B-PROPERTY DAMAGE LIABILITY
The company will pay on behalf of the insured
all sums which the insured shall become legally obligated to pay as damages because of
 A. bodily injury or
 B. property damage
 to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations off the suit are groundless, false or fraudulent, * * *.
 Exclusions
This insurance does not apply.
* * *
 (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land,
the atmosphere * * *; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental; * * *
(Emphasis added.)
An "occurrence was defined as follows:
 "[O]ccurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured [.]
(Emphasis added.)
The record reflects that in the years subsequent to the December 1, 1984 expiration date for the last policy issued by appellant, appellee obtained comprehensive general liability insurance from other sources. One of these sources was the Housing Authority Risk Detection Group ("HARRG"). The HARRG insurance policies that covered the period between June 1, 1988 and June 1, 1993 contained the following relevant provision:
 H. COVERAGE SECTION H. LEAD-BASED PAINT INGESTION LIABILITY (CLAIMS-MADE FORM)
* * *
1. COVERAGE AGREEMENT:
 a. In consideration of your warranties, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of a claim first made against the insured during the Policy Term for "bodily injury" arising from the ingestion of lead — based paint after the Retroactive Date shown in the Declarations for this hazard. Supplementary Payments with respect to claims for Lead-Based paint ingestion are included in the limit of coverage shown for this risk in the Declarations. * * *
 We will provide you this coverage, subject to the terms and conditions stated herein, notwithstanding any exclusion of this risk set forth in any other part of the Policy. * * *
 b. We will have the right and duty to defend any "suit" seeking those damages even if any of the allegations of the "suit" are groundless, false or fraudulent.
(Emphasis added.)
On August 6, 1992 a class action suit was filed against appellee in the United States District Court, Northern District of Ohio, Eastern Division. In Wade, et al v. CuyahogaMetropolitan Housing Authority, et al, Case No. 1:92CV1596 ("Wade"), the plaintiffs initially claimed they brought suit against appellee on behalf of the following group of persons:
 * * * a class compromised (sic) of all past, present, and future participants in CMHA Housing programs who have been exposed to unhealthy levels of lead while living in CMHA Housing or Section 8 Housing and their parents or guardians.
The plaintiffs in Wade alleged that in May 1990, excessive levels of lead were found in appellee's housing, that appellee failed to eliminate the health hazard posed by the lead, and that they had been injured by the presence of the lead. The plaintiffs alleged several causes of action against appellee, including negligence, breach of contract, and breach of warranties of habitability.
In September 1992, appellee forwarded a copy of the Wade
complaint to appellant. Appellee requested appellant to assume its obligation to defend appellee in the lawsuit since the complaint stated claims that fell within the coverage of policies IGL1016, 1GL1039 and 1GL1133.
In October 1992, the Wade plaintiffs filed an amended complaint. Plaintiffs now stated the proposed class consisted of:
 * * * all past, present, and future participants in CMHA Housing programs who have been or are at risk of being harmed by exposure to unhealthy levels of lead-based paint while living in CMHA Housing or Section 8 Housing from 1971 onward.
(Emphasis added.)
In January 1993, appellee forwarded to appellant a copy of theWade First Amended Complaint; appellee repeated its request that appellant assume its obligation "consistent with your policy obligations" to defend appellee in the action.
The record does not disclose appellant's response to appellee's first two requests; however, in September 1993, the Wade
plaintiffs again amended their complaint. They now sought certification of the following class of persons:
 * * * residents of CMHA Housing and/or Section 8 Housing who, as of June 7, 1993 were eleven years of age or younger, and who have lived for one or more months, from January 1, 1990 to January 1, 1995, in CMHA Housing and/or in Section 8 Housing that contains a lead-based paint hazard.
(Emphasis added.)
The record reveals that by the spring of 1995, appellant rejected appellee's request to assume a portion of appellee's defense in the Wade action on the basis that there had been "no occurrence within Imperial's policy period and coverage is excluded under the language of the pollution exclusion."
On August 15, 1995 appellee filed the instant action in the Cuyahoga County Court of Common Pleas.[2] Appellee sought a declaratory judgment that pursuant to the insurance policies issued to appellee, appellant had a duty to defend and indemnify it with regard to the Wade action. Appellee's complaint set forth the class definition as stated in Wade's Second Amended Complaint.
Appellee attached to its complaint copies of the insurance policies issued to it by appellant.[3]
Appellant's answer denied the pertinent allegations and set up several affirmative defenses.
In November 1995, appellee filed a motion for partial summary judgment in the trial court. Appellee contended it was entitled to judgment as a matter of law on its claim that appellant had "an absolute duty to defend" appellee in the Wade action pursuant to the terms of the insurance policies. Appellee attached no evidentiary materials to its motion.
In January 1996, appellant filed a response to appellee's motion for partial summary judgment, viz., a brief in opposition together with its own motion for summary judgment as to all of appellee's claims. Therein, appellant argued it had no duty to defend appellee in the Wade action for two reasons: (1) the Wade
claims arose more than five years after the periods of coverage provided by the insurance policies had expired; and (2) the cause of action asserted against appellee in the Wade case was subject to the pollution exclusion. Appellant supported its brief and motion with numerous evidentiary materials.
On September 15, 1997 the trial court issued a journal entry and opinion with regard to the outstanding motions. The trial court stated in pertinent part as follows:
 * * * the proposed class definition [in Wade] may not be adopted by the Court or yet another class definition eventually may be used. It is sufficient that the original complaint in Wade alleges an injury for which defendant Imperial Casualty provided coverage and the original and the amended class definitions are broad enough that there may be one or more class members alleging injury from exposure to lead during the coverage period of Imperial Casualty's insurance policies issued to CMHA and its fellow plaintiffs.
 By necessity, coverage of Imperial Casualty for a judgment against CMHA and its fellow plaintiffs will be determined at a later time based on other facts. The duty to defend is based only on the allegation of covered injury based in the complaint. Since the insurance policy was in force during a time period in which one or more of the plaintiffs is alleged to have sustained injury, there may be some individuals in the plaintiff class who fall precisely within the definition of injuries covered by these policies. It is inappropriate to determine the specifics of that coverage in this litigation but it is sufficient to conclude that, and the Court does hereby declare that, the defendant Imperial Casualty Indemnity Co. has a duty to defend CMHA and its fellow plaintiffs in the Wade action.
 Defendant next contends that the pollution exclusion of its three (3) policies precludes coverage for injury from lead-based paint. This contention has no merit. The mode and manner of alleged ingestation (sic) of this toxic substance by the class of injured-children are inconsistent with the means of toxic pollution described in the policies' exclusionary clause: * * *
(Emphasis added.)
The trial court thus granted appellee's motion for partial summary judgment and noted the remaining issue to be determined was whether [appellant's] failure to defend was wrongful or, put another way, constitutes bad faith."
In April 1998, appellee filed a motion to "amend by interlineation" its amended complaint. Appellee sought to "remove as surplusage" any language "which can be construed as a bad faith claim" against appellant. The trial court granted appellee's motion.
Shortly thereafter, the parties submitted to the trial court stipulations as to the following pertinent facts for purposes of trial: (1) the insurance policies previously filed in the court were true and accurate; and (2) the parties would litigate through memoranda of law the remaining issue, viz., whether appellee was entitled to attorney fees incurred as prevailing party in the absence of any claim of bad faith.
The trial court agreed; therefore, the parties subsequently each filed their trial briefs on the matter.
In an opinion and order dated November 23, 1998 the trial court granted judgment on appellee's claim for attorney fees "based upon the pertinent case law."[4]
Appellant filed its appeal from the foregoing order. Appellant presents three assignments of error for review.
Appellant's first assignment of error states:
 IMPERIAL HAS NO DUTY TO DEFEND BECAUSE THE FACTS ALLEGED IN THE WADE LAWSUIT PRECLUDE THE POSSIBILITY OF EXPOSURE OR MANIFESTATION DURING THE PERIOD OF COVERAGE PROVIDED BY THE IMPERIAL POLICIES.
Appellant argues summary judgment in appellee's favor on its claim appellant had a duty to defend was improper. Appellant contends the trial court applied an incorrect standard of law to the undisputed facts of this case; thus, the trial court erred in denying appellant's motion for summary judgment. This court agrees.
Civ.R. 56 (C) makes summary judgment proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Norris v. Ohio Std. OilCo. (1982), 70 Ohio St.2d 1. Once it is made and properly supported, a motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. Dresher v. Burt (1996),75 Ohio St.3d 280; Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108.
In reviewing a motion for summary judgment, the inferences to be drawn from the evidence are to be viewed in a light most favorable to the nonmovant; nevertheless, if reasonable minds could come only to the conclusion there is no genuine issue of material fact, summary judgment must be granted. Leibreich v.A.J. Refrigeration, Inc. (1993), 67 Ohio St.3d 266 at 269;Dresher v. Burt, supra at 297-298.
In its motion for partial summary judgment, appellee asserted appellant had an "absolute duty to defend" based upon the language of the polices that required appellant to do so "even if the allegations of the suit [against the insured] are groundless, false, or fraudulent." The trial court apparently agreed with appellee's position; however, in so doing, the trial court did not consider other language contained in that same policy provision. It is important to note appellant obligated itself to pay only those claims against appellee "to which this insurance applies." Thus, appellant was not required to defend a claim that was not within the coverage of the policy. Socony-Vacuum Oil Co.v. Continental Cas. Ins. Co. (1945), 144 Ohio St. 382, syllabus 2; Owners Ins. Co. v. Singh (Sep. 21, 1999), Richland App. No. 98-CA-108, unreported. Appellant had a duty to defend appellee if the allegations of the Wade complaint "arguably or potentially" fell within the scope of the policy coverage. Willoughby Hills v.Cincinnati Ins. Co. (1984), 9 Ohio St.3d 177. Appellant could justify its refusal, however, if the terms of the policy clearly precluded coverage. Westfield Ins. Co. v. HealthOhio, Inc.
(1992), 73 Ohio App.3d 341.
In its complaint filed in the trial court, appellee stated the Wade lawsuit was brought on behalf of:
 * * * residents * * * who, as of June 7, 1993, were eleven years of age or younger, and who had lived for one or more months, from January 1, 1990 to January 1, 1995, in CMHA Housing and/or Section 8 Housing that contains a lead-based paint hazard.
(Emphasis added.)
In its motion for partial summary judgment, appellee expanded characterization of "proposed" class definition in the Wade
lawsuit as set forth in its complaint by stating it included "children who were born and/or have lived in CMHA Housing * * *since 1982." (Emphasis added.) Appellee contended on this basis that appellant's duty to defend might "arise at a later stage of the case."
Pursuant to Fed.R.Civ.P. 15, however, since amendments of pleadings relate back to the filing of the original complaint, the Wade plaintiffs had narrowed the class rather than expanded it. Cf., Socony Vacuum Oil Co. v. Continental Cas. Co., supra.
The Wade plaintiffs sought not to include all those persons who merely had been residents of appellee since 1982 but to include young children who lived in appellee's housing in the five yearsbetween 1990 and 1995.
A review of the Wade complaints demonstrates that although the plaintiffs alleged exposure to the paint occurred earlier, they did not allege actual injury occurred prior to 1990. Rather, the injury that "resulted from" exposure to the hazards of lead-based paints occurred beginning in May 1990 and became manifest beginning in August 1992. The plaintiffs, moreover, were representatives by virtue of the fact they had resided at appellee during the relevant time of the "occurrence" of the "injury."
Clearly, the policies issued by appellant covered only injuries that occurred between December 1, 1981 and the expiration of 1GL1133 on December 1, 1984. Since the "injury" alleged by the Wade plaintiffs neither was "caused by an occurrence" nor manifested itself during the time period during which the policies were in force, appellant had no duty to defend appellee in the Wade action. Cleveland Bd. of Edn. v. R.J. Stickle, Int'l.
(1991), 76 Ohio App.3d 432; Westfield Ins. Co. v. HealthOhio,Inc., supra; cf., W. Lyman Case Co. v. Nat'l. City Corp. (1996),76 Ohio St. 345; [76 Ohio St.3d 345]; Beacon Ins. Co. of Am. v.Kleoudis (1995), 100 Ohio App.3d 79; Board of Educationof South Euclid-Lyndhurst City School Dist. v. Nationwide Mut. Ins.Co. (May 11, 1995), Cuyahoga App. No. 67306, unreported.
On the undisputed facts of this case, therefore, the trial court improperly granted appellee's motion for partial summary judgment and improperly denied appellant's motion for summary judgment. Timock v. Bolz (1996), 115 Ohio App.3d 283; cf., OhioCas. Ins. v. Joseph Sylvester Constr. Co. (Sep. 30, 1991), Trumbull App. No. 90-T-4439, unreported.
Accordingly, appellant's first assignment of error is sustained.
Appellant's remaining assignments of error state:
 II. IMPERIAL HAS NO DUTY TO DEFEND BECAUSE THE POLLUTION EXCLUSION CONTAINED IN IMPERIAL'S POLICIES PRECLUDES COVERAGE FOR INJURIES RESULTING FROM EXPOSURE TO LEAD-BASED PAINT.
 III. THE TRIAL COURT'S AWARD OF ATTORNEYS' FEES TO PLAINTIFF-APPELLEE WAS AN ABUSE OF DISCRETION BECAUSE ATTORNEYS' FEES WERE NEITHER NECESSARY NOR PROPER.
This court's disposition of appellant's first assignment of error renders these assignments of error moot. App.R. 12 (A) (1) (c).
The orders of the trial court are reversed. Judgment is entered for appellant.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee its costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J. and JAMES M. PORTER, J., CONCUR.
 __________________________________ KENNETH A. ROCCO, JUDGE
[1] The named plaintiffs were the Chief Executive Officer ("CEO") and members of the Board of Commissioners of the Cuyahoga Metropolitan Housing Authority.
[2] Although HARRG originally was also a plaintiff in the instant action, it subsequently dismissed its claims; therefore, it is not a party to this appeal.
[3] Approximately one month later, appellee filed an amended complaint setting forth the individual names of its CEO and members of its Board of Commissioners as additional plaintiffs in the action. The substantive allegations of the complaint essentially were unchanged.
[4] This court notes that on September 24, 1999 a new version of R.C. 2721.01 et seq. became effective. See R.C. 2721.16.