Peter ZAKUTANSKY and Mary Jane Zakutansky, Petitioners,

v.

State BOARD OF TAX COMMISSIONERS, Respondent.

No. 45T10–9812–TA–186.

Tax Court of Indiana.

Aug. 28, 2001.

Publication Ordered Oct. 31, 2001.

Phillip D. Norman, Costas & Norman, Indianapolis, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys For Respondent.

FISHER, J.

Peter and Mary Jane Zakutansky appeal the final determination of the State Board of Tax Commissioners (State Board) assessing their residential land as of the March 1, 1989 assessment date. The Zakutanskys present the following issues, which the Court restates as:

I.   Whether the State Board's assessment of the Zakutanskys' property at $350 per front foot was correct; and

II.  Whether the State Board applied the correct depth factor to the Zakutanskys' real property by using the 150 feet depth table.

## FACTS AND PROCEDURAL HISTORY

The Zakutanskys own residential land and improvements in Porter County, Indiana. The subject property is located at 14 Cedar Trial, Portage, Indiana. This places the property in Ogden Dunes, a residential area located on the shores of Lake Michigan.

In accordance with Indiana Code § 6-1.1-4-13.6 (1989), the Porter County Land Valuation Commission and the State Board promulgated a Land Order for use in the 1989 general reassessment and subsequent years. Under that order, the land values in Ogden Dunes varied from $100 to $900 per front foot. Consistent with the Land Order, the Zakutanskys' land was assessed at $350 per front foot for 1989.

On July 25, 1990, the Zakutanskys filed a Petition for Review of Assessment (Form 131) with the State Board claiming, in part, that the land values were not uniform and equal when compared to other assessments in Ogden Dunes and that an incorrect depth factor was applied. After a hearing, the State Board denied the Zakutanskys' appeal. The Zakutanskys subsequently appealed to this Court, and on February 13, 1998, this Court ordered the petition remanded to the State Board. This Court held that the State Board acted in an arbitrary and capricious manner when it relied exclusively on the Land Order and refused to consider the value of comparable properties located within the Zakutanskys' neighborhood. *Zakutansky v. State Bd. of Tax Comm'rs,* 691 N.E.2d 1365, 1370-71 (Ind. Tax Ct. 1998).

On September 9, 1998, the State Board conducted its remand hearing. On October 21, 1998, the State Board issued its final determination, upholding its initial ruling of $350 per front foot for the Zakutanskys' property and its depth factor determination of 150 feet. The Zakutanskys filed an original appeal to this Court, and this Court held a trial and an oral argument. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

██ This Court gives final determinations of the State Board great deference when the State Board acts within the scope of its authority. *Louis D. Realty Corp. v. State Bd. of Tax Comm'rs,* 743 N.E.2d 379, 382 (Ind. Tax Ct. 2001), *review denied.* Accordingly, this Court reverses final determinations of the State Board only when they are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

██ In addition, a taxpayer challenging the validity of the State Board's final determination bears the burden of demonstrating the invalidity of the final determination. *Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind. Tax Ct. 1998). The taxpayer must present a prima facie case, i.e., a case in which the evidence is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *GTE North Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 887 (Ind. Tax Ct. 1994) (citations and internal quotation marks omitted). To establish a prima facie case, the taxpayer must offer probative evidence concerning the alleged error. *King Indus. v. State Bd. of Tax Comm'rs,* 699 N.E.2d 338, 343 (Ind. Tax Ct. 1998); *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs,* 704 N.E.2d 1113, 1119 (Ind. Tax Ct. 1998), *review denied.* "Once the taxpayer carries the burden of establishing a prima facie case, the burden shifts to the State Board to rebut the taxpayer's evidence and justify its decision with substantial evidence." *Clark,* 694 N.E.2d at 1233.

To carry its burden, the State Board must do more than merely assert that it assessed the property correctly. *Loveless Const. Co. v. State Bd. of Tax Comm'rs*, 695 N.E.2d 1045, 1049 (Ind. Tax Ct. 1998), *review denied*. Instead, the State Board must offer an authoritative explanation of its decision to rebut the taxpayer's prima facie showing. *Id.*

## Discussion

### I. Front Foot Value

The first issue is whether the State Board's assessment of the Zakutanskys' property at $350 per front foot was correct. The Zakutanskys contend that the State Board breached its duty to ensure that the Zakutanskys' property was assessed in an equal and uniform manner with similarly situated properties.

The Zakutanskys' property is located in the third row of houses from Lake Michigan. The Zakutanskys assert that the property does not have a view of Lake Michigan or the Chicago skyline. The property was assessed at a rate of $350 per front foot. Peter Zakutansky introduced into evidence at trial a list of properties in Ogden Dunes to demonstrate that the assessment of the Zakutanskys' property was not equal and uniform with similarly situated properties. The following facts are uncontroverted: (1) Duncan and Sue Hines own a property located at 29 Diana Road in Ogden Dunes, which is situated in the third row from Lake Michigan. The Hines' property does not have a view of Lake Michigan or the Chicago skyline. The Hines' property was assessed at the value of $125 per front foot. (Pet'r Ex. 2.); (2) Alan and Nancy Johnson own a property located at 15 Diana Road in Ogden Dunes, which is situated in the fourth row from Lake Michigan. The Johnsons' property does not enjoy a view of Lake Michigan or the Chicago skyline. The Johnsons' property was assessed at the rate of $100 per front foot. (Pet'r Ex. 2.); and (3) Robert and Juliann McDevitt own a property located at 25 Diana Road Ogden Dunes, which is situated immediately next to the Hines' property, and in the fourth row from Lake Michigan. The property does not enjoy a view of Lake Michigan or the Chicago skyline. The McDevitts' property was assessed at the rate of $100 per front foot. (Pet'r Ex. 2.)

The Zakutanskys bear the burden of presenting a prima facie case that their property was not assessed in an equal and uniform manner. *Clark*, 694 N.E.2d at 1233. Peter Zakutansky testified that the subject property is similar to the properties owned by Hines, Johnson, and McDevitt. Given the similarities of the subject property and the other properties that were submitted into evidence, the Zakutanskys have presented a prima facie case that a disparity may exist in assessments for comparable properties in Ogden Dunes.

In presenting a prima facie case, the Zakutanskys placed the burden of going forward on the State Board to show that its determination was supported by substantial evidence. *Id.* The State Board contends that the properties submitted by the Zakutanskys are not truly comparable. They presented the following evidence: The subject property sits high on a hill. (Resp't Ex. 4); (Trial Tr. at 34.) The property is located in the third row of homes from the lake, but lots in the second row of homes steeply slope to Shore Drive, thus not threatening to obstruct the Zakutanskys' view. (Resp't Ex. 4); (Resp't Br. at 10.) The main section of the property is level. (Resp't Ex. 4); (Resp't Br. at 10.) A lake view is possible, and the only obstruction to his lake view is the trees. (Resp't Ex. 4); (Trial Tr. at 42-43.)

The Zakutanskys argue that the town ordinance prohibits them from cutting down the trees. However, the hearing officer testified that he saw the lake from the Zakutanskys' yard when he was standing between the side of the house and the row of trees where the hill goes down quite steeply to the neighboring house behind the Zakutanskys' house. (Trial Tr. at 43-44.) In addition, the State Board noted that the front of the property faces Juniper Park, which adds another attractive characteristic. (Resp't Br. at 10); (Trial Tr. at 46, 48.)

The hearing officer inspected the properties submitted by the Zakutanskys as well as an additional twenty-six properties. (Resp't Ex. 4); (Trial Tr. at 28.) In contrast to the subject property, the hearing officer noted that the Hines' and Johnsons' properties are level to the road, which affords no opportunity at all to see the lake because of the hill that is in front of it. (Trial Tr. at 42-43.) Moreover, the State Board pointed out that the desirable lots in Ogden Dunes are lake lots, lots with a view, and lots located high on hills. (Resp't Br. at 10.) The State Board noted that many of the other properties that are physically close to the subject property and possess similar characteristics are valued at the same rate or higher than the subject rate. (Resp't Br. at 10); (Trial Tr. at 51.)

The State Board dealt with the Zakutanskys' evidence in a meaningful manner. Based upon the above evidence, the State Board showed material distinctions between the subject property and other properties submitted by the Zakutanskys. It is clear to this Court that the State Board presented substantial evidence to support its determination of assessing the subject property at $350 per front foot. Therefore, the Court AFFIRMS the final determination of the State Board on this issue.

## II. Depth Factor Determination

The second issue is whether the State Board applied the correct depth factor to the Zakutanskys' property by using the 150 feet depth table. The Zakutanskys contend that the State Board erred in determining that the 150 feet depth table should be applied to their property. Instead, they maintain that the proper depth chart should be 175 feet, which would result in the application of a 1.02 depth factor instead of the 1.10 depth factor by using the 150 feet lot depth table. They argue that the "predominant lot depth" of their neighborhood is approximately 179 feet. (Trial Tr. at 19-21.) They arrived at this figure by taking the average of lot depths on their block. Specifically, they added together the depth of twenty-one lots surrounding their property on Block C and then divided the sum by the number of lots. (Pet'r Ex. 1); (Trial Tr. at 19-21.)

The State Board contends that the methodology used by the Zakutanskys to determine the depth factor is incorrect. First, the State Board argues that the "area under consideration" for determining the depth factor of the subject property should be the town of Ogden Dunes. The hearing officer testified that Ogden Dunes itself was an isolated community and that the whole area was considered to be one neighborhood. (Trial Tr. at 38, 56.) Secondly, the State Board maintains that "predominant lot depth" is the one that occurs most often in an area, though it could be the one that occurs in only ten percent of the lots in the entire area, especially in a situation like in Ogden Dunes where most lots are unique in shape. (Trial Tr. at 57-58.) The hearing officer relied on the Porter County Land Valuation Order in computing the depth table to be applied to the Zakutanskys' property. (Resp't Br. at 12.) However, he also testified that he observed that the 150 feet depth recurred

more often than any other one even in the immediate area of a several block radius of the Zakutanskys' property. (Trial Tr. at 58.)

A "depth factor" refers to "the factor used to adjust the front foot base rate to account for depth variations from the norm." *See* IND. ADMIN. CODE tit. 50, r. 2.1-2-1 (1992) (codified in present form at *id.* r. 2.2-4-8 (1996)). "Depth charts should be selected by determining the predominant lot depth of the area under consideration." *Id.* In this case, the parties dispute the meanings of "predominant" and "area under consideration."

■■■■ Administrative rules are subject to the same rules of construction as statutes. *Poracky v. State Bd. of Tax Comm'rs*, 635 N.E.2d 235, 236 (Ind. Tax Ct. 1994). In construing a statute, this Court's foremost goal is to determine and effectuate legislative intent. *State ex rel. Camden v. Gibson Circuit Court*, 640 N.E.2d 696, 700 (Ind.1994). Furthermore, Indiana law is clear that a court may construe and interpret a statute only if it is ambiguous. *Shoup Buses, Inc. v. Dep't of State Revenue*, 635 N.E.2d 1165, 1167–68 (Ind. Tax Ct. 1994). The Indiana Supreme Court consistently has held that there is no need to apply the rules of statutory construction when a statute is unambiguous. *Mitchell v. State*, 659 N.E.2d 112, 114–15 (Ind.1995). A clear and unambiguous statute must be read to "mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted." *Department of State Revenue v. Horizon Bancorp*, 644 N.E.2d 870, 872 (Ind. 1994). The "words and phrases" of such a statute "shall be taken in their plain, ordinary, and usual sense." *State Bd. of Tax Comm'rs v. Jewell Grain Co.*, 556 N.E.2d 920, 921 (Ind.1990); IND. CODE ANN. § 1-1-4-1(1) (West Supp.1997).

■■■■ In this case, there is no ambiguity as to the meaning of "predominant." The plain, ordinary, and usual sense of "predominant" is "prevailing all others in numbers, frequency, distribution." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1786, 671 (1981) (quoting definition from "dominant" as a synonym of "predominant"). Following this definition, the predominant lot depth should not be an average figure of all lots in the area under consideration, but instead, one that occurs more often than others. Therefore, the State Board is correct in its interpretation of "predominant."

■■■■ As to the "area under consideration," the State Board's definition is too broad when it takes the entire town of Ogden Dunes into account to determine the predominant lot depth. However, an area should not be limited to one block as the Zakutanskys did. The hearing officer himself testified that an area or neighborhood is going to be governed upon the characteristics within it and the economic effects that it would have. (Trial Tr. at 38-39.) Peter Zakutansky noted that Ogden Dunes consisted of between 600 and 650 houses which have different qualities and characteristics. (Trial Tr. at 62.) In fact, the actual county land order shows that Ogden Dunes is divided into individual subdivisions and has price ranges within those subdivisions. (Trial Tr. at 38.) By pointing out this fact, this Court is not suggesting that the area under consideration should be limited to a given subdivision. On the contrary, this Court has consistently emphasized the importance of considering the value of surrounding properties in the same neighborhood when conducting assessments. *Vonnegut v. State Bd. of Tax Comm'rs*, 672 N.E.2d 87, 90 (Ind. Tax Ct. 1996). While the land values of a particular subdivision should inform the value of a given property, they must

also be viewed within the context of the larger neighborhood. *Id.* It is the same with respect to the determination of the predominant lot depth in the area under consideration, because the determination of depth factor is part of property value assessment process.

This issue is REMANDED to the State Board for a determination of the predominant lot depth in the area under consideration and which depth factor is applicable. The Zakutanskys are reminded that on remand they have the burden to produce probative evidence concerning the area and predominant depth, and the State Board is to deal with any evidence in a meaningful manner and, if necessary, to support its decision with substantial evidence. *See Clark,* 694 N.E.2d at 1233.

## CONCLUSION

For the reasons stated, this Court AFFIRMS the State Board's final determination on the issue of front foot value. However, this Court REVERSES and REMANDS the issue of the depth factor determination to the State Board for further consideration consistent with this opinion.

## *ORDER*

A non-party has filed a Motion for Publication of Memorandum Decision in this matter. The Court, having considered the same and being duly advised in the premises, now finds said motion should be GRANTED and that this Court's opinion in this appeal should now be ordered published. More than 10 days has elapsed since said motion was filed and neither party has objected to the motion nor has either party challenged non-party's standing to file the motion.

IT IS THEREFORE ORDERED as follows:

1. The non-party's "Motion for Publication of Memorandum Decision" is granted and this Court's opinion handed down on August 28, 2001, marked "Not for Publication" is now ordered published.