DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the Lucas County Court of Common Pleas which found in favor of appellees Michael S. Mack, M.D., Roshinder Padda, M.D., and The Toledo Clinic, Inc. For the reasons listed below, we affirm the trial court's judgment.
 {¶ 2} Appellant, Daniel Dedmon, individually and as executor of the estate of Sheila Dedmon, sets forth the following assignments of error:
 {¶ 3} 1. "The trial court erred when it failed to grant appellant's Motion for a New Trial and Motion for Relief from Judgment."
 {¶ 4} 2. "The trial court erred when it allowed an Amendment to the Pleadings to Conform to the Evidence to present a claim for battery or lack of informed consent, and immediately granted a directed verdict on that claim."
 {¶ 5} The facts pertinent to this appeal are as follows. Shelia A. Dedmon sought treatment of vaginal discomfort from Michael S. Mack, M.D., an OB/GYN. After examining Dedmon, Dr. Mack diagnosed possible abdominal adhesions, a complication from a prior hysterectomy.
 {¶ 6} Dr. Mack recommended that a diagnostic laparoscopy be performed. In this outpatient procedure, a small incision is made in the bellybutton and a camera is inserted into the abdominal cavity in hopes of aiding further diagnosis. The procedure is "blind," meaning that while the camera is being inserted, the surgeon cannot see where the instrument is going. The diagnostic laparoscopy was performed on October 23, 1998. Due to complications during the procedure, Dr. Mack had to insert the camera without first inflating the abdominal cavity. Dr. Mack discovered no adhesions and discharged Dedmon, although the record is unclear whether she ever actually left the Toledo Clinic.
 {¶ 7} Over the next several hours, Dedmon's condition worsened. She was admitted to Toledo Hospital around 5:00 p.m. and underwent several tests. Two days later, Dedmon underwent surgery again. The surgeon discovered a small tear in her bowel. Leakage from this tear resulted in a bacterial blood infection. The tear was repaired and infected tissue was removed from the abdomen. Ultimately, the blood infection was incurable and Dedmon died on November 1, 1998.
 {¶ 8} Appellant, acting as executor of Dedmon's estate, filed a medical malpractice action on April 12, 2000. After discovery and depositions, this original action was dismissed without prejudice in June 2002. Appellant re-filed in August 2002, and the matter proceeded to jury trial. On June 20, 2006, the jury returned a seven-to-one verdict in favor of appellees.
 {¶ 9} On August 15, 2003, appellant filed a motion for a new trial, and alternatively, a motion for relief from judgment. The basis for both motions was alleged misconduct by three jurors. Appellant supported these motions with an affidavit signed by Misti Stringham, the lone dissenting juror, and a transcript of the voir dire proceedings. This affidavit alleged inappropriate remarks by three jurors before and during deliberations. Additionally, it alleged three jurors had failed to disclose information during voir dire. Appellant argued disclosure would have triggered their removal for cause or use of a preemptory challenge. A hearing was conducted to investigate allegations of juror misconduct. All the jurors, including the alternates, were subpoenaed and testified.
 {¶ 10} During the post-trial hearings, appellant's counsel stipulated appellant was seeking a new trial, and the motion for relief from judgment was withdrawn. The trial court then denied appellant's motion for a new trial. It held the evidence of juror misconduct was insufficient because, other than Stringham, none of the jurors had a recollection of any of the alleged statements. The trial court also held the time limitations on voir dire were reasonable because the court had thoroughly questioned the venire and had identified areas of interest for counsel to follow-up. Moreover, the court acknowledged the time limitations were equally enforced and that appellant was actually given an additional 15 minutes beyond the initial time limitation. Finally, the trial court held that the directed verdict, after appellant was permitted to amend the complaint to comply with the evidence at trial, was appropriate. Appellant failed to provide the court with a trial transcript demonstrating he met his prima facie burden of proof. Appellant filed this timely appeal.
 I. Motion for a New Trial {¶ 11} In his first assignment of error, appellant argues the trial court erred when it denied his motion for a new trial and motion for relief from judgment. We cannot agree.
 {¶ 12} Appellant stipulated to the withdrawal of the motion for relief from judgment. This motion was never "denied." Thus, an appeal regarding its denial is not properly before this court.
 {¶ 13} On appeal, appellant renews his arguments in support of his motion for a new trial. First, he alleges juror misconduct. This allegation is grounded upon statements attributed to three jurors prior to or during deliberations. Appellant specifically alleges: (1) Charles Hall stated to the other jurors that he did not know why they were at trial, because doctors are allowed to make mistakes; (2) Hall also stated doctors should not be held liable for their mistakes, and that he was against medical malpractice lawsuits; (3) Ann Graham admitted she was a current patient of the Toledo Clinic, and that she had a doctor friend who was prevented from practicing by the costs of malpractice insurance; and (4) Scott Peluso, the jury foreman, admitted his wife was injured during medical treatment and they had not sued. Appellant again seeks to support these allegations with the affidavit of Stringham, the sole dissenting juror.
 {¶ 14} Secondly, appellant renews his argument that the voir dire time limitations imposed by the trial court were unreasonable. Further, appellant argues the time limits prejudiced him by preventing a full exploration of the individual juror's biases. Appellant alleges the result of these limitations was a jury that concealed bias by not truthfully answering the questions asked of its individual members.
 {¶ 15} Finally, appellant argues the trial court erred in granting a directed verdict regarding the amended complaint. Appellant contends that even though he had rested his case, he should have had the opportunity to provide further witnesses to more fully establish the prima facie elements of the claim of informed consent. Further, appellant argues that even if he should not be afforded the opportunity to call additional witnesses, the expert testimony regarding the standard of care required under the claim can be established using Dr. Mack's testimony of record. Alternatively, appellant argues the laparoscopy actually performed by Dr. Mack was so radically different from the surgery consented to, no expert testimony regarding standard of care was required. Each of these arguments will be addressed separately below.
 A. Alleged Juror Misconduct {¶ 16} It is axiomatic that a verdict will not be impeached by the evidence of a member of the jury, unless the evidence is first brought forward by an independent third-party. See Statev. Miller, 6th Dist. No. L-02-1265, 2003-Ohio-4857, at ¶ 7;State v. Adams (1943), 141 Ohio St. 423, 427. Ohio has adopted the aliunde evidence rule in Evid.R. 606(B), which states:
 {¶ 17} "[A] juror may not testify as to any matter orstatement occurring during the course of the jury's deliberationsor to the effect of anything upon his or any other juror's mindor emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidenceof that act or event has been presented." (Emphasis added.)
 {¶ 18} Adoption of this rule protects the sanctity of the jury process. It promotes verdict finality, insulates the jury, and prevents improper action by the trial court. See State v.Hessler (2000), 91 Ohio St.3d 108, 120; State v. Schiebel
(1990), 55 Ohio St.3d 71, 75-76. Testimony by a dissenting juror regarding any action or statement during deliberation is improper unless it is first brought to the attention of the court from some outside source. State v. Adams (1943), 141 Ohio St. 423,427; State v. Smith (Apr. 18, 1975), 6th Dist. No. C.A. 942.
 {¶ 19} Here, appellant alleges four instances of juror misconduct. These allegations are based solely on the affidavit proffered by Stringham. Of these four, three allegations deal with statements allegedly made during jury deliberations. Given that these alleged statements were not brought before the court from an outside source, they violate the aliunde evidence rule. They were not properly before the trial court, and with one exception will not be considered by this court.
 {¶ 20} The admission by Graham that she is a patient of the Toledo Clinic must be addressed. Juror misconduct may be grounds for a new trial. Civ.R. 59(A)(2). Failure to divulge material information during voir dire is grounds for a finding of misconduct. McDonough Power Equip., Inc. v. Greenwood (1984),464 U.S. 548, 556. The party alleging the conduct bears the burden of proof. Id. The alleging party must demonstrate a dishonest answer on the part of the juror and further demonstrate that such answer would have provided a valid basis for a challenge for cause. Id.
 {¶ 21} Appellant argues the trial court and counsel agreed that any current patient of the Toledo Clinic would be dismissed for cause because of an "intrinsic" conflict of interest. There is no evidence of such an agreement in the record. Appellees also accurately point out appellant failed to challenge potential juror Fry for cause even though he had disclosed a more extensive on-going relationship with the clinic. The record shows Graham answered all the voir dire questions asked of her accurately and honestly. Appellant has offered nothing to contradict the record. Thus, the trial court's determination that no juror misconduct occurred will not be disturbed.
 {¶ 22} That leaves only the statement that allegedly occurred prior to deliberation which has been attributed to Hall. According to the affidavit of Stringham, shortly before deliberations the jury had lunch together at the Coney Island Restaurant. Allegedly, during this lunch Hall said words to the effect of, "I don't know why we are at trial, because doctors are allowed to make mistakes." This statement allegedly occurred in front of two or three other jurors, including Stringham. During the post-trial hearings appellant failed to offer any corroboration for this allegation. Every juror, including the alternates, testified and only Stringham remembered the comment. On appeal, appellant offers this court nothing further to demonstrate the statement actually occurred. Thus, although the statement allegedly occurred outside deliberations, nothing new supports it, and we must defer to the trial court's judgment.
 B. Voir Dire Limitations {¶ 23} At the trial level, a judge is the master of his courtroom, and may conduct examination of potential jurors. Civ.R. 47(A). A court has the discretion to impose reasonable limitations on voir dire in the interests of judicial economy.State v. Swanson (1984), 16 Ohio App.3d 375, 376; State v.Bridgeman (1977), 51 Ohio App.2d 105, 109-110. Where prejudice is alleged, the party must demonstrate a clear abuse of discretion by the trial court, or the assignment of error will not be well-taken. State v. Cornwell (1999), 86 Ohio St.3d 560,565. An abuse of discretion connotes more than an error of law or judgment; it implies the action of the trial court was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 24} The trial court extensively questioned the venire before giving each side ample time for follow-up questions. The time limitations on counsel were equally enforced. Although 30 minutes were granted by the court, appellant's counsel actually used nearly 45 minutes. This concession by the trial court demonstrates its fairness and impartiality. Appellant has offered nothing to demonstrate the time restriction was unreasonable. Thus, the trial court did not abuse its discretion by imposing a time limit on voir dire.
 C. Directed Verdict {¶ 25} Finally, appellant argues Dr. Mack's motion for directed verdict was granted in error. As this is the focus of appellant's second assignment of error, it will be more fully explored there. The record demonstrates appellant provided the trial court with no evidence to support a claim of error as to a motion for a new trial. Where appellant clearly failed in his evidentiary burden, this court will not find the judgment of a trial court in error. Based on the foregoing, this court finds appellant's first assignment of error not well-taken.
 II. The Claim for Lack of Informed Consent {¶ 26} In his second assignment of error, appellant argues the trial court erred in granting a motion for directed verdict immediately after it granted a motion to amend the pleadings to conform to the evidence. The record shows appellant made his motion to amend after both parties had rested. This motion was granted. Appellees then moved for directed verdict which was granted. Appellant argues he should have been given the opportunity to present further witnesses in support of the newly amended claim or that the expert testimony required can be established through the testimony of Dr. Mack. Alternatively, appellant argues the laparoscopy actually performed by Dr. Mack was so different from the surgery consented to that no expert testimony is required regarding the appropriate standard of care.
 {¶ 27} Directed verdict presents an issue of law to be reviewed de novo. Hardy v. General Motors Corp. (1998),126 Ohio App.3d 455, 462. When a motion for directed verdict is properly made, the trial court must construe the evidence in favor of the non-moving party. Civ.R. 50(A)(4). If the court finds "that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted * * * the court shall sustain the motion and direct verdict for the moving party as to that issue." Id. (Emphasis added.) Directed verdict tests the legal sufficiency of taking the case to a jury, and is appropriate where the opposing party has not shown an essential element of its case. See Wagner v. Midwestern Indemn.Co. (1998), 83 Ohio St.3d 287, 294; Glover v. Boehm PressedSteel Co. (1997), 122 Ohio App.3d 702, 709.
 {¶ 28} Informed consent is based on the maxim that an individual has the right to determine what will happen to his or her own body. Siegel v. Mt. Sinai Hosp. (1978),62 Ohio App.2d 12, 21. Undertaking a surgical procedure without valid consent constitutes a "technical assault and battery" or a tort based in negligence. Lacey v. Laird (1956), 166 Ohio St. 12, 22;Belcher v. Carter (1967), 13 Ohio App.2d 113, 114. The law does not require a physician to fully inform his patient of all
the potential risks associated with a given procedure. Bedel v.Univ. of Cincinnati Hosp. (1995) 107 Ohio App.3d 420, 427
(emphasis added). Lack of informed consent is established by showing: (1) the physician failed to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy; (2) the unrevealed risks and dangers actually materialize and are the proximate cause of the injury to the patient; and (3) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the surgery. Nickell v. Gonzalez (1985), 17 Ohio St.3d 136, 139. To show the above, a party must demonstrate by expert medical evidence what a reasonable practitioner in the same discipline, under similar circumstances, would have disclosed regarding the surgical procedure. Bedel v. Univ. OB/GYN Assoc., Inc. (1991), 76 Ohio App.3d 742,744. The party must then demonstrate that the accused physician departed from this standard. Id.
 {¶ 29} Appellant failed to provide testimony to establish the standard of care required of Dr. Mack. No expert was provided to establish what a reasonable OB/GYN under similar circumstances would have told Dedmon. This court is not persuaded by appellant's argument that this standard of care can be established through Dr. Mack's own testimony. At a minimum, the record demonstrates Dr. Mack had an established habit of disclosing certain general surgical risks to his patients, and that the risks disclosed included death. Moreover, appellant has offered no evidence to show that death was not explicitly disclosed either by Dr. Mack or during the course of the computerized information session in which Dedmon participated. Thus, appellant has failed to meet his prima facie burden of establishing a claim for lack of informed consent.
 {¶ 30} Appellant further argues in the alternative that the procedure actually performed on Dedmon is so obviously different from the laparoscopy performed as to negate the requirement of expert testimony. In support, appellant insists Dedmon did not consent to a laparoscopy where the abdominal cavity had not been inflated first. The record demonstrates Dr. Mack does not walk his patients through the procedure step-by-step. He discusses it in general terms. This being the case, it would be impossible for Dedmon to limit consent only to a laparoscopy after inflation, unless there was evidence that inflation was an express
condition of the procedure. Appellant fails to direct this court to any evidence that would demonstrate existence of such a condition. Further, Dr. Mack testified that performing a laparoscopy carries the same risks whether the abdominal cavity is inflated or not. Appellant offered no testimony or literature to refute this statement.
 {¶ 31} Finally, the timing of the motion for directed verdict is critical. When appellant made his motion to amend he had rested his case. Appellees had also rested. Therefore, appellees' motion for directed verdict was appropriately timed. Based on theevidence that had been presented at trial, the court granted a directed verdict. Nothing in the record indicates this was inappropriate. Thus, appellant's second assignment of error is not well-taken.
 {¶ 32} On consideration whereof, this court finds judgment in favor of appellees was proper. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Parish, J., concur.