OPINION
{¶ 1} Appellant, John C. Grundy, Administrator of the Estate of Susanne Cheryl Sumner, deceased, appeals the judgments entered by the Trumbull County Court of Common Pleas. Following a jury trial, the trial court entered judgment in favor of appellees, Dr. Jagprit Singh Dhillon and Emergency Professional Services, Inc. Thereafter, the trial court denied Grundy's Civ.R. 59 motion for a new trial. *Page 2 
 {¶ 2} On the morning of October 26, 2000, 22-year-old Susanne Sumner was not feeling well. She called her mother at work and indicated she felt a lump behind her ear and had a splitting headache. Her mother advised her to take Tylenol. At 11:30 a.m., Sumner again called her mother and told her the Tylenol had not helped and that she was vomiting. Her mother left work to take her to the hospital. On the way to the hospital, Sumner vomited again.
 {¶ 3} Sumner arrived at the Trumbull Memorial Hospital emergency room at 12:32 p.m. At that time, she was crying, hyperventilating, and complained of mouth and jaw pain. Sumner's vital signs were taken at a triage station, and she was directed to the "ED-2" section of the emergency room, a section for patients with less serious conditions.
 {¶ 4} At 12:50 p.m., Sumner was seen by Dr. Dhillon. Dr. Dhillon diagnosed Sumner's problem as severe tooth pain and noted that she had poor dentation. Dr. Dhillon ordered an injection for the pain and a medication for Sumner's vomiting. Despite the medicine, Sumner continued to vomit.
 {¶ 5} About 1:50 p.m., Sumner was transferred to the "ED-1" section of the emergency room, a section for patients with more serious conditions. There, she was given more medication for vomiting and an I.V. to prevent dehydration. Also, Dr. Dhillon ordered lab tests done on a blood sample.
 {¶ 6} About 3:15 p.m., some of the test results of the lab work were completed. They revealed Sumner had a high white-blood count with a "left shift," indicating an infection. Further, her bicarbonate levels were low, which is also indicative of an infection. *Page 3 
 {¶ 7} About 4:10 p.m., a nurse noted that Sumner continued to vomit and "dry heave." Shortly thereafter, Sumner insisted on going home. The nurse was not sure whether Dr. Dhillon saw Sumner prior to her discharge, and there was nothing in Sumner's chart to indicate he had. Dr. Dhillon did not order a "PO" test, which is used to ascertain whether a patient is able to keep fluids down, prior to Sumner's discharge.
 {¶ 8} Dr. Dhillon ordered Sumner discharged, and Sumner left the emergency room at 4:52 p.m. Sumner was given various instructions and several prescriptions. She was also told to see a dentist as soon as possible.
 {¶ 9} Sumner filled the prescriptions about 7:00 p.m. That evening, Sumner continued to vomit, but declined to go back to the hospital. In the early morning hours of the following day, Sumner woke her mother and asked her to call 9-1-1. Sumner reported that she could not feel her fingers or feet. Her mother called 9-1-1, and Sumner was transported to the Trumbull Memorial Hospital emergency room, where she arrived at 2:47 a.m.
 {¶ 10} Sumner was seen by Dr. Costarella, who quickly diagnosed her with meningococcemia. Sumner was given antibiotics and steroids. She was eventually transferred to the Cleveland Clinic, where she died on October 28, 2000.
 {¶ 11} Forum Health does business as Trumbull Memorial Hospital. Dr. Dhillon worked for a group of doctors known as Emergency Professional Services, Inc. Emergency Professional Services, Inc. had a contractual relationship with Forum Health to provide doctors to work at the Trumbull Memorial Hospital emergency room.
 {¶ 12} In February 2002, Grundy, the administrator of Sumner's estate, filed the instant action against appellees and Forum Health. Forum Health was later dismissed. *Page 4 
The complaint asserted, among other claims, that appellees were responsible for the wrongful death of Sumner due to Dr. Dhillon's negligence. The matter proceeded to a jury trial in April 2004.
 {¶ 13} During the voir dire examination, the potential jurors were asked about their experiences with the Trumbull Memorial Hospital emergency room. In addition, they were specifically asked whether they had taken any of their family members to the Trumbull Memorial Hospital emergency room. Prospective juror Anthony Krusely did not respond to the question regarding family members. Krusely was seated on the jury.
 {¶ 14} The jury trial lasted several days. In addition to the factual witnesses, multiple expert witnesses testified for each side regarding their respective opinions as to whether Dr. Dhillon met the applicable standard of care. At the end of the trial, interrogatories were submitted to the jury. In response to the first interrogatory, the jury found that Dr. Dhillon was not negligent in his care of Sumner. Accordingly, the jury returned a verdict in favor of appellees. The trial court entered judgment on the verdict in favor of appellees.
 {¶ 15} Following the trial, Attorney Martin White, counsel for Grundy, interviewed several jurors on the sidewalk outside of the Trumbull County Courthouse. During this interview, Juror Krusely revealed that he had taken one of his sons to the Trumbull Memorial Hospital emergency room on a prior occasion. He further stated that he believed the standard of care at Trumbull Memorial Hospital is low.
 {¶ 16} Two weeks after judgment was entered in favor of appellees, Grundy filed a motion for a new trial, pursuant to Civ.R. 59. The basis of this motion was twofold. First, Grundy asserted a new trial was appropriate due to the misconduct of Juror *Page 5 
Krusely. Second, Grundy argued a new trial was necessary because the jury's verdict in favor of appellees was not sustained by the weight of the evidence. Appellees filed a brief in opposition and a supplemental memorandum in opposition to Grundy's motion for a new trial.
 {¶ 17} The trial court held a hearing on Grundy's motion for a new trial. At the hearing, Krusely testified that (1) he had taken his son to the Trumbull Memorial Hospital emergency room on a prior occasion, (2) that Trumbull Memorial Hospital released his son without an affirmative diagnosis, (3) that he was not satisfied with that answer, so he took his son to North Side hospital, where the son was diagnosed with mononucleosis, and (4) that he believed the standard of care at Trumbull Memorial Hospital was low. Juror Rhonda Noel also testified at the hearing. She was one of the jurors interviewed outside the courthouse and heard Krusely's responses. She testified that during the interview, Krusely stated the standard of care at Trumbull Memorial Hospital was "rotten;" he also stated that he would not let Dr. Dhillon treat him for a paper cut. Finally, Attorney White testified at the hearing. He testified that he also heard Krusely's comments about the low standard of care at Trumbull Memorial Hospital and the paper-cut hypothetical. Also, he testified that Krusely told him that Sumner's mother and boyfriend should not have relied on the diagnosis from Trumbull Memorial Hospital; rather, they should have sought additional treatment at another facility. Attorney White testified that had Krusely revealed the incident with his son during voir dire, he would have sought to have him removed for cause and, if that failed, he would have exercised a peremptory challenge to ensure Krusely did not sit on the jury. *Page 6 
 {¶ 18} Following the hearing, the trial court denied Grundy's motion for a new trial.
 {¶ 19} On appeal, Grundy raises two assignments of error. His first assignment of error is:
 {¶ 20} "The trial court abused its discretion by denying plaintiffs motion for new trial pursuant to Civ.R. 59(A)(2) on the ground of misconduct of the jury."
 {¶ 21} A trial court's decision denying a motion for a new trial should not be reversed unless the trial court abused its discretion.[1] "The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"[2]
 {¶ 22} The trial court partially based its decision to deny Grundy's motion for a new trial on Evid.R. 606(B), which provides, in part:
 {¶ 23} "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith." *Page 7 
 {¶ 24} Evid.R. 606(B) is the formal adoption of the common law rule known as the evidence aliunde rule.[3] The purpose of this rule is to protect the sanctity and integrity of the jury process by preventing inquiry into the jury's deliberative process.[4] However, "[t]he aliunde rule is not applicable to prevent evidence of a juror's failure to disclose facts on voir dire examination."[5]
 {¶ 25} The trial court erred by applying Evid.R. 606(B) to Krusely's comments following the trial and to his testimony at the post-trial hearing. These comments and testimony did not concern the jury's deliberative process but, rather, concerned the issue of whether Krusely failed to disclose certain information on voir dire. Therefore, Krusely's testimony and comments did not violate Evid.R. 606(B).[6]
 {¶ 26} Appellees note that juror misconduct is not a ground for reversing a judgment unless prejudice is demonstrated.[7] Regarding a juror's failure to disclose information in response to a question on voir dire, the prejudice is determined by whether the complaining party was denied his or her right to an impartial jury.[8]
 {¶ 27} The Supreme Court of the United States has held: *Page 8 
 {¶ 28} "One touchstone of a fair trial is an impartial trier of fact — `a jury capable and willing to decide the case solely on the evidence before it.'[9] Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions onvoir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious."[10]
 {¶ 29} In McDonough Power Equipment, Inc. v. Greenwood, the Supreme Court set forth the following standard to be applied when determining whether a new trial is appropriate when it is alleged that juror misconduct occurred in a situation like this:
 {¶ 30} "[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."[11] *Page 9 
 {¶ 31} Thus, there are two fundamental questions to be answered in this matter. First, did Krusely commit misconduct by failing to disclose the incident with his son and, second, did Krusely's subsequent participation in the jury process affect the impartiality of the jury?
 {¶ 32} During voir dire, Attorney White asked the jurors if any of them had been patients at Trumbull Memorial Hospital. Several jurors gave their experiences, including Krusely, who stated he was at the Trumbull Memorial Hospital emergency room for a few hours following a car accident. Attorney White then asked if anyone else had an experience with the Trumbull Memorial Hospital emergency room. An unidentified potential juror stated his story about an emergency room visit. Thereafter, Attorney White posed the following question to the prospective jurors:
 {¶ 33} "How about members of your family? Have you ever taken members of your family to the Trumbull Memorial emergency room?"
 {¶ 34} An unidentified potential juror responded yes to this question, without explanation. Juror Krusely did not respond to this question.
 {¶ 35} The following colloquy occurred at the hearing on Grundy's motion for a new trial:
 {¶ 36} "Q. [By Attorney White] I'm asking you about before the trial. Before the trial. When you were outside, let me tell you what I remember you telling me. What I remember you telling me is that you had an episode where you took one of your children to Trumbull Memorial Hospital, and that your child was released from the hospital, and you weren't satisfied with the care you got there? *Page 10 
 {¶ 37} "A. Yes, that was my oldest son, yes.
 {¶ 38} "Q. Your oldest son?
 {¶ 39} "A. I ended taking him to North Side Hospital."
 {¶ 40} This testimony demonstrates that Krusely did, in fact, take one of his family members, his son, to the Trumbull Memorial Hospital emergency room.
 {¶ 41} Appellee argues that the transcript does not indicate the question about family members going to the emergency room was posed to all members of the jury. Rather, appellee argues that the question could have only been posed to an unidentified prospective jury who had just responded to a previous question. When viewing this question in isolation, as it appears in the transcript, it is arguably susceptible to multiple interpretations. Depending on Attorney White's voice inflection and body language, the question could have been posed to a single prospective juror or to the entire panel of prospective jurors. However, when the question at issue is viewed in the context of the entire voir dire, it is clear that the question was posed to the entire panel of prospective jurors. While conducting his voir dire, Attorney White asked the group of prospective jurors the following questions:
 {¶ 42} "Does anyone know my family?; * * * Have I ever represented members of your family?; * * * What are your thoughts about lawyers in general?; * * * Is there anyone here who works at Trumbull Memorial Hospital or who has family members or very close friends who work at Trumbull Memorial Hospital?; * * * What do you think about frivolous lawsuits?; * * * Anyone with medical training in your background?; * * * Anyone who has a family member who has a medical background in training?; * * * Who thinks doctors walk on water?; * * * How many people have been a patient at Trumbull Memorial *Page 11 
Hospital?; * * * Anybody else with any experiences at the emergency room at Trumbull Memorial Hospital?"
 {¶ 43} Some of the questions produced no response. However, others produced significant answers from the panel of prospective jurors. When an individual would affirmatively answer one of the questions posed to the group, Attorney White would individually question that prospective juror regarding his or her individual experience. This process would continue with each prospective juror who responded to the general question. Thereafter, Attorney White would change the topic by asking the entire group another question. Prior to asking about family members, Attorney White asked, "Anybody else with any experiences at the emergency room at Trumbull Memorial Hospital?" This question stimulated several responses. When those responses concluded, Attorney White asked the question "How about members of your family? Have you ever taken members of your family to the Trumbull Memorial emergency room?" After reviewing the context in which this final question was placed, it is apparent it was addressed to all of the prospective jurors. As such, Krusley should have answered it. *Page 12 
 {¶ 44} Appellees cite Swayze v. Scher, in support of their assertion that a juror has no duty to volunteer information during voir dire.[12] In Swayze, the juror answered all questions that were asked of her, but she did not provide additional information.[13] The Sixth Appellate District has similarly held that a potential juror did not commit misconduct when she accurately and honestly answered all of the voir dire questions.[14] In the instant matter, Krusely failed to answer a question regarding whether he had taken a family member to the Trumbull Memorial Hospital emergency room.
 {¶ 45} The facts of McDonough Power Equipment, Inc. v. Greenwood are as follows. The plaintiff was injured by his neighbor's riding lawnmower.[15] One of the jurors remained silent during the voir dire when the prospective jurors were asked whether they or any members of their immediate family had sustained any "severe injury."[16] In fact, that juror's son suffered a broken leg as a result of a tire explosion. The facts of the instant case present a more significant level of juror misconduct than those in the McDonough Power Equipment, Inc. v.Greenwood case. The question in McDonough Power Equipment, Inc. v.Greenwood was somewhat ambiguous, in that different individuals have different definitions of what a "severe" injury is.[17] In this case, the question posed to the jurors, "have you ever taken a member of your family to the Trumbull Memorial [Hospital] emergency room," was more straightforward. It required a yes or no answer, and was not susceptible to multiple interpretations. *Page 13 
 {¶ 46} Krusely testified at the post-trial hearing that he had taken his son to the Trumbull Memorial Hospital emergency room. Krusely remained silent when he was specifically asked about this topic during voir dire. Moreover, at no time during the entire trial did Krusely reveal that he had taken his son to the Trumbull Memorial Hospital emergency room, yet he relayed this information to Attorney White moments after the trial ended. Such conduct reveals that his failure to disclose his son's experience with the Trumbull Memorial Hospital emergency room was a failure to honestly answer a yes or no question on voir dire. Krusely committed juror misconduct by failing to affirmatively respond to the voir dire question as to whether he had taken a family member to the Trumbull Memorial Hospital emergency room.
 {¶ 47} We next turn to whether the jury remained impartial in light of the juror misconduct.
 {¶ 48} At the hearing on Grundy's motion for a new trial, the following exchange occurred:
 {¶ 49} "Q. [by Attorney White] Am I correct, Mr. Krusely, that you indicated to me, you pointed your hand down towards the ground and you said that the standard of care at Trumbull Memorial Hospital is low?
 {¶ 50} "A. I said in my opinion it was low. As far as what the standard is for the hospital, I have no idea what they consider the standard. In my opinion, my personal opinion as a layman, yes, I think it is."
 {¶ 51} Later, Krusely was questioned on this issue by the trial court: *Page 14 
 {¶ 52} "THE COURT: Let me ask you this one last thing. Do you agree that you made the comment to counsel of [Grundy] after the trial, that you didn't think that the expectation with Trumbull would be as high as North Side?
 {¶ 53} "[Krusely]: No. What I said was, `I believe it has a low standard of care.' However, if the doctor wasn't able to help my kid, I decided to seek a different doctor. It wasn't that I thought North Side was better. I thought it was different. Simply a second opinion. If my kid is sick, I need to seek more help. Is that the best available? I have no idea. Maybe I should have taken him to [the] Cleveland Clinic. My point is, if I felt this particular facility wasn't providing the service I needed, maybe I better find a different facility."
 {¶ 54} Krusely's testimony and statements regarding his opinion about the standard of care at Trumbull Memorial Hospital clearly demonstrate his partiality. It is patently unfair for a juror to have preconceived ideas regarding the quality of health care rendered by a medical facility and, then, be asked to decide whether that same medical facility provided appropriate medical care in a wrongful death case.
 {¶ 55} Moreover, we note the similarity between the incidents involving Sumner and Krusely's son. While the two medical conditions were significantly different, both incidents involved the patient presenting at the Trumbull Memorial Hospital emergency room with an unknown illness and the hospital's alleged misdiagnosis of the actual condition. This similarity can be emphasized by reviewing other cases concerning undisclosed information during voir dire.
 {¶ 56} In McDonough Power Equipment, Inc. v. Greenwood, we note the undisclosed incident concerned an accident that resulted from an automobile tire *Page 15 
explosion, to which the defendant, a manufacturer of riding lawn mowers, had no connection or involvement. The potential for bias was relatively minimal, in that the prior undisclosed incident had no connection with the present case before the juror. In the instant matter, the undisclosed past incident concerned the misdiagnosis of a medical condition by the Trumbull Memorial Hospital emergency room, which was the exact same allegation, against the exact entity, as Krusely was asked to decide in the case before him.
 {¶ 57} In Apaydin v. Cleveland Clinic Found., a potential juror remained silent when the prospective jurors were asked whether they believed that Turkish citizens should be able to sue for damages in Cleveland. However, later in the trial, that juror disclosed to other jurors that he believed people from Turkey should not be permitted to sue the Cleveland Clinic.[18] The trial court removed the biased juror and sat an alternate juror in his place. On appeal, the plaintiff argued that the trial court should have granted his motion for a new trial. The Eighth Appellate District disagreed, holding that the remaining jurors, who had merely heard the biased juror's comments, indicated they could remain impartial.[19] The primary distinction between the Apaydin v.Cleveland Clinic Found. case and the matter sub judice is that Krusely actually participated in the jury deliberations and verdict, while the biased juror in the Apaydin case was replaced with an alternate. *Page 16 
 {¶ 58} Another case relying on the authority of the McDonough PowerEquipment, Inc. v. Greenwood holding is Mullett v. Wheeling Lake ErieRy. Co.[20] In Mullett, an attorney served on the jury. During voir dire, he remained silent when a question was asked if any of the potential jurors had previously encountered anyone from the law firm of defendant's counsel. In fact, the juror-attorney had tried a case five years prior against a defendant who was represented by a different attorney from that same firm.[21] The Eighth District upheld the trial court's denial of a motion for a new trial, finding there was no evidence that the attorney-juror was not impartial.[22] The case sub judice is distinguishable from the Mullet case on two important points. First, the attorney-juror in Mullett had a prior dealing with another member of the firm of the defendant's counsel. He did not have a prior dealing with the defendant or even the defendant's counsel.[23] In the instant matter, Krusely had a prior dealing with an actual defendant, involving a similar issue to that which was the subject of the jury trial. Failing to disclose a prior interaction with an attorney, who happens to belong to the same firm as an attorney for one of the parties, is much less significant than failing to disclose an interaction with a party in the litigation, especially when that interaction was similar to the facts the juror is asked to decide. Secondly, the attorney-juror in Mullett demonstrated that he acted impartially.[24] The same cannot be said of Krusely, who testified, under oath, that he believes Trumbull Memorial Hospital has a low standard of care. *Page 17 
 {¶ 59} In this matter, juror misconduct occurred by Krusely's failure to disclose the incident regarding his son's experience at the Trumbull Memorial Hospital emergency room. Further, Grundy was prejudiced by this misconduct, in that an impartial jury was not seated in this matter. Thus, the trial court abused its discretion by failing to grant Grundy's motion for a new trial.
 {¶ 60} Grundy's first assignment of error has merit.
 {¶ 61} Grundy's second assignment of error is:
 {¶ 62} "The jury verdict is against the manifest weight of the evidence."
 {¶ 63} Due to our analysis of Grundy's first assignment of error, Grundy's second assignment of error is moot.[25]
 {¶ 64} The judgment of the trial court is reversed. This matter is remanded to the trial court for a new trial.
COLLEEN MARY OTOOLE, J., concurs,
MARY JANE TRAPP, J., dissents with Dissenting Opinion.
[1] (Citations omitted.) Apaydin v. Cleveland Clinic Found. (1995),105 Ohio App.3d 149, 152.
[2] (Citations omitted.) Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
[3] Farley v. Mayfield (June 30, 1986), 10th Dist. No. 86AP-19, 1986 Ohio App. LEXIS 7481, at *3.
[4] Dedmon v. Mack, 6th Dist. No. L-05-1108, 2006-Ohio-2113, at ¶ 18.
[5] Farley v. Mayfield, 1986 Ohio App. LEXIS 7481, at *3.
[6] Id.
[7] See Bentley v. Kremchek, 1st Dist. No. C-040721, 2005-Ohio-3038, at ¶ 8, citing Koch v. Rist (2000), 89 Ohio St.3d 250, 251-252.
[8] McDonough Power Equipment, Inc. v. Greenwood (1984), 464 U.S. 548,556.
[9] Smith v. Phillips (1982), 455 U.S. 209, 217.
[10] McDonough Power Equipment, Inc. v. Greenwood,464 U.S. at 554.
[11] McDonough Power Equipment, Inc. v. Greenwood,464 U.S. at 556.
[12] Swayze v. Scher (Jan. 18, 1995), 2d Dist. No. 14310, 1995 Ohio App. LEXIS 97, at *20.
[13] Id.
[14] Dedmon v. Mack, 2006-Ohio-2113, at ¶ 21.
[15] McDonough Power Equipment, Inc. v. Greenwood,464 U.S. at 449.
[16] Id. at 550.
[17] Id. at 555.
[18] Apaydin v. Cleveland Clinic Found., 105 Ohio App.3d at 151.
[19] Id. at 156.
[20] Mullett v. Wheeling Lake Erie Ry. Co., 8th Dist. No. 81688, 2003-Ohio-3347.
[21] Id. at 1f39.
[22] Id. at ¶ 41.
[23] Id. at ¶ 39-41.
[24] Id.
[25] See App.R. 12(A)(1)(c).
[25] See App.R. 12(A)(1)(c).